By the Court.
 

 The constitutional provision above quoted authorizes the adoption of a county charter. It directs what such charter
 
 shall
 
 provide and then what it
 
 may
 
 provide. “It shall provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law.” It then states that “such charter may provide for the concurrent or exclusive exercise by the county, in all or in part of its area, of all or of any designated powers vested by the Constitution or laws of Ohio in municipalities.”
 

 It is contended by the relator that this charter undertakes to exercise only the authority first above enumerated. The respondents contend that the latter enumerated power is also included in the terms of the charter; that the charter vests municipal powers in the county; and that, since it did not receive the favorable vote of a majority of those voting outside of the largest municipality, nor in each of a majority of municipalities and townships, it cannot become effective.
 

 Let us ascertain, then, whether this charter vests “any municipal powers in the county.” If the answer to that question is in the affirmative, then the Board of Elections was right in refusing to issue the certificate demanded, and the prayer for a writ-of mandamus should be denied. Clearly it was contemplated by the Constitution, in the provision authorizing county charters, that the county should have no municipal powers except as conferred by the provisions of the charter adopted under the authority granted by the
 
 *458
 
 Constitution. The county may assume all the powers of a municipal corporation, for the charter may provide for the organization of the county as a municipal corporation; and the county may assume any of such powers
 
 concurrently
 
 or
 
 exclusively
 
 with municipalities. Whether a charter vests in the county municipal powers, must be determined from the provisions thereof. Certainly it must be conceded that no municipal power can be exercised unless specifically conferred by the - terms of the charter. To constitute the vesting of
 
 cmy
 
 municipal power in the county within the terms of the Constitution requiring the specified majorities, it is not essential that such power be conferred exclusively upon the county. The statement that the charter may provide for the
 
 concurrent
 
 or
 
 .exclusive
 
 exercise by the county of any power vested by the Constitution or laws in municipalities, contradicts the theory that the municipality must be deprived entirely of the right to exercise such powers before it can be held that the charter is undertaking to vest
 
 any
 
 municipal powers in the county. Under the clear and express terms of this constitutional provision, the specified majorities are required if
 
 any
 
 municipal powers are conferred upon the county, whether such powers are
 
 concurrent
 
 or
 
 exclusive.
 

 The municipalities were given a voice in the determination of the question whether any of their municipal powers were to be divested or surrendered to the county. A division of the authority enjoyed by the municipalities is to that extent a taking or transfer of their municipal power. We cannot subscribe to the theory that the requirement with reference to special majorities has application only if a municipality is to be completely swallowed by the county and entirely lose its governmental entity. The requirement as to special majorities was intended to afford an opportunity for the municipalities to protect themselves and preserve their municipal integrity through the ballot.
 
 *459
 
 It would deprive them of a part of the protection afforded by the Constitution if they may be divested of a portion of their municipal power, notwithstanding the adverse vote of a majority of the municipalities of the county.-
 

 In numerous instances the charter seeks to vest in Cuyahoga county powers which are vested in municipalities by the Constitution or laws of the state. Clearly the authority to enact ordinances sought to be conferred upon the county is a municipal power. Under Section 3 of Article XVIII of the state Constitution, “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.” Previously, like power was conferred upon municipalities of the state by statute. No such power has been vested by law in counties or in county commissioners. The same may be said of many other provisions. The charter provides that the director of public safety, besides being vested
 
 ex officio
 
 with all the powers of the sheriff in the enforcement of the criminal laws of the state “and of the ordinances of cities and villages within the County,” shall perform certain other functions therein enumerated. The Legislature, by Sections 3616, 3617 and 3628, General Code, specifically confers upon municipalities the power to organize and maintain police departments and the right and power to increase and enlarge duties imposed upon the police force by statute. This charter adopts practically that same language conferring those same powers upon a county council. These powers are not only generally recognized as municipal powers, but arte specifically1 iso treated by the laws of the state. This charter seeks to confer on the director of public safety all the powers and duties of the sheriff and then, in addition, confers upon the so-called county council authority to
 
 *460
 
 establish a police department. Nowhere has the Legislature conferred power upon a sheriff to enforce ordinances of either a city or of a county council. Under this charter, a county-wide police force is provided for and the safety director is authorized to send police officers into every municipality.
 

 It must be borne in mind that the relator fails in his contention if the charter vests
 
 a/i%y
 
 municipal powers in the county. The initiative and referendum are powers conferred by the Constitution upon municipalities, and such powers have not been vested by law in counties. Furthermore, power is sought to be vested in the county council with reference to a civil service commission. That is a power conferred-upon and long exercised by the cities of this state and has never been conferred upon a county.
 

 It may be well to again call attention to the language employed in the Constitution authorizing the county charter. It does not use the word “divesting”, but only the word “vesting”; it does not refer anywhere to taking any power away from municipalities, but only to the vesting of
 
 any
 
 municipal powers in the county. These powers — any or all of them — may be conferred upon a county, but the very constitutional provision conferring that authority requires that to become effective the charter must have the several majorities specified.
 

 Counsel for relator urge that any provisions in the charter undertaking to confer municipal powers are in effect eliminated from the charter by the provision that “Nothing contained in this Charter shall be construed to vest in the County any municipal powers which would require its approval by the special majorities set forth in Section 3, Article N, of the Constitution of Ohio.” That contention seems to beg the whole question. The provisions throughout the charter which confer municipal powers upon the county cannot be so readily eliminated by an explanation of in
 
 *461
 
 tent and purpose that they are not to be included. The declaration of the intent or purpose or the understanding or conception of the framers of the charter of the import or effect of the language employed may be enlightening as to their mental attitude; but such declaration does not relieve the court of the duty of exercising the judicial function of construing not only the proposed charter but the language of the state Constitution authorizing it. The constitutional provision in question was inserted for the evident purpose of giving assurance to the citizens of municipalities that municipal powers would not be conferred upon, and municipal functions could not be exercised by, the county under the charter unless favored by the special majorities set forth in the Constitution.
 

 We are of the opinion that the Board of Elections was right in refusing to issue the certificate that the charter had been adopted. Hence, the demurrer to the answer is overruled and, relator not desiring to plead further, the writ of mandamus prayed for must be denied.
 

 Writ denied.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.