**STATE, ex rel. PECYK et, Plaintiff-Relators, v. GREENE et, Defendants-Respondents.**
**STATE, ex rel. BROWNLEE et, Plaintiffs-Relators, v. GREENE et, Defendants-Respondents.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 22997, 22301. Decided October 19, 1953.

528

Walter & Haverfield, Brownlee & Gamble, Cleveland, for relators, Pecyk and Brownlee.

Frank T. Cullitan, County Pros., Saul S. Danaceau, Asst. County. Pros., Cleveland, for respondents.

## OPINION

Per CURIAM:

These are original actions in mandamus in this court brought by the relators seeking writs of mandamus directing the respondents, the deputy state supervisors and inspectors of election of Cuyahoga County, Ohio, to have the names of the relators' candidates for the office of councilman of their respective wards of the City of Cleveland, printed and placed on the official ballot of the City of Cleveland for the next ensuing general election to be held November 3, 1953 and to compel the respondents to certify said electors as duly nominated nominees for the office of councilman of their respective wards as prayed for in the petition. The two cases raising the same issues were consolidated by agreement of the parties.

The stipulations of fact are as follows:

"1. Within the time prescribed by law there was filed in the office of the Board of Deputy State Supervisors and Inspectors of Election the respective nominating petitions of the Relators herein for the office of councilman of the City of Cleveland.

"2. This act on behalf of Relators entitled their names to be placed on the ballot in their respective wards for submission to the electors at the Primary Election, September 29, 1953.

"3. The results of said Primary Election were as follows:

"Ward 2

| | |
|---|---|
| Steve Suhajcik | 2,095 |
| ARTHUR P. STEINMETZ (Relator herein) | 1,178 |
| Joseph Morrow | 870 |

"Ward 3

| | |
|---|---|
| Joseph E. Flannery | 3,234 |
| DANIEL LINK (Relator herein) | 527 |
| William D. McElroy | 231 |

"Ward 21

| | |
|---|---|
| David C. Murphy | 1,866 |
| ERNEST C. T. SANTORA (Relator herein) | 991 |
| Ray Jablonowski | 640 |
| Joseph Nosan | 135 |

"Ward 28

| | |
|---|---|
| Joseph W. Kovach | 2,104 |
| ANTHONY PECYK (Relator herein) | 1,497 |
| Richard Hart | 493 |

"4. At a Special Election held September 29, 1953 there was submitted to the electors of the City of Cleveland a proposed charter amendment to the Charter of the City of Cleveland in the form as set forth in and identified as 'Exhibit A,' attached hereto and made a part hereof.

"5. Said charter amendment received a majority of the votes cast thereon.

"6. The abstract of said Special Election was certified to the Secretary of State under date of October 3, 1953.

"7. The repealed Section 10, The Charter of the City of Cleveland, Chapter 3, provided as set forth in and identified as 'Exhibit B,' attached hereto and made a part hereof.

"8. In each of the election contests involving Relators. the candidate receiving the largest number of votes also received a majority of the votes cast for the office of councilman.

"9. Under date of October 8, 1953 the Board of Deputy State Supervisors and Inspectors of Election ruled that the said charter amendment applied to the Primary Election held September 29, 1953, consequently Relators were not declared nominated."

Exhibit A as referred to in paragraph 4 of the foregoing stipulation being a copy of the Official Questions and Issues Ballot presented to the electors of Cleveland at the special primary election held September 29, 1953 is as follows:

---

CITY OF CLEVELAND
PROPOSED CHARTER AMENDMENT
SEC. 10. SELECTION OF CANDIDATES
A majority vote is necessary for passage
VOTE BALLOT WITH AN X

---

Shall existing Section 10 of the Charter be amended for the purpose of nominating officers to be elected at the General Election in the year 1953 and thereafter to read as herein set forth. This amendment

if approved by a majority of the electors voting thereon at the Special Election, September 29th, 1953 shall become a part of the Charter of the City of Cleveland, effective as of the date of the certification of the abstract of said election to the Secretary of State by the Board of Elections as provided by law, and Section 10 of the present charter shall thereby be repealed.

SECTION 10. SELECTION OF CANDIDATES

YES
NO

The number of candidates for any office at any regular municipal election, in the City at large or in each ward, as the case may be, shall be the two candidates on the primary election ballot receiving the highest number of votes at the primary election. Provided. that if any candidate at a primary election shall have received a majority of all of the votes cast for such office at the primary election he shall be the candidate for such office at the regular municipal election. In case there shall not be for any office more than two persons who shall have filed petitions as provided for in this charter, the said persons shall be the candidates at the regular municipal election and the primary for that particular office shall not be held.

The name of each person who is nominated in compliance herewith shall be printed on the official ballot at the general election and the names of no other candidates shall be printed thereon.

The Charter of the City of Cleveland, chapter 3. Section 10, as shown by Exhibit B referred to in paragraph 7 of the stipulations of fact provided as follows:

"The number of candidates for any office at any regular municipal election, in the city at large or in each ward. as the case may be, shall be the two candidates on the primary election ballot receiving the highest number of votes of the primary election. In case there shall not be for any office more than two persons who shall have filed petitions as provided for in this charter, then said persons shall be the candidates at the regular municipal election and the primary for the particular office shall not be held.

"The name of each person who is nominated in compliance herewith shall be printed on the official ballot at the general election. and the names of no other candidates shall be printed thereon."

Two questions of law are presented to us for consideration and determination—

(1) Is the charter amendment in conformity with the constitution of the State of Ohio?

(2) Does the charter amendment adopted by a majority of the voters at the primary election held September 29, 1953 or, does the charter provision before the adoption of such amended charter govern and control the placing of the names of candidates on the official ballot for the office of councilman to be presented to the voters at the general election to be held November 3, 1953.

The constitutional question will be first considered. Relators claim that, the subject amendment to the Charter of the City of Cleveland is in direct violation of the **Constitution of Ohio, Art. XVII, Sec.. 1;** and therefore void.

**Art. XVII, Sec. 1** reads as follows:

"Elections for state and county officers shall be held on the first Tuesday after the first Monday in November in the even numbered years; and all elections for all other elective officers shall be held on the first Tuesday after the first Monday in November in the odd numbered years."

Amended Sec. 10 of the Charter, supra, provides in part that, "if a candidate at a primary election shall have received a majority of all of the votes cast for such office at the primary election he shall be the candidate for such office at the regular municipal election."

The people of the City of Cleveland under the Home Rule Provisions of the **Constitution of the State of Ohio** contained in **Article XVIII, Sections 7** and 9 have the absolute right to change the fundamental law of the city provided such changes are not repugnant to constitutional provisions.

In the case of **Reutener v. Cleveland, 107 Oh St 117, paragraph 1** of the syllabus provides:

"The power given by the **Ohio Constitution, Section 9, Article XVIII,** to the electors of a city to amend their municipal charter, includes the power to repeal or strike out provisions."

And on page 139, the Supreme Court said:

"To hold valid this system of voting adopted by the people of Cleveland is merely to carry out the plain meaning of the constitutional provision that municipalities shall have all powers of local self-government, and to give effect to the power which rightly takes precedence over all statutes and court decisions, the will of the people, as expressed in the organic law."

Now it is contended by the relators that the practical effect of the mentioned proviso of the charter amendment is the automatic election of the candidates receiving a majority of the votes cast at the primary election and tantamount to the

holding of a general election simultaneously with a primary election involving identical offices as far as those who are affected by the majority proviso are concerned and consequently in violation of **Article XVII, Sec. 1 of the Constitution of Ohio.**

In our opinion, this contention of the relators is untenable because it is clear from a reading of the charter amendment that it merely determines the number of candidates for any office at any regular municipal election and provides that the names of each candidate nominated in accordance therewith be printed on the official ballot at the general election and that the names of no other candidates be printed thereon. The proviso alluded to, therefore, does not determine the election of candidates receiving a majority of the votes cast for the office since their names will appear on the official ballot at the general election for a vote of the people and section 13 of the Charter of the City of Cleveland provides for a blank space where voters may write in the names of any other qualified person they may desire to vote for and elect.

Our Supreme Court in **Fitzgerald v. Cleveland, 88 Oh St 338** at 357 had the following to say:

"The system or plan to be followed in the nomination and election of the officials of any city is only of interest and concern to the people within the limits of the city, and when governmental powers have been conferred upon the city, it acts within its authority when it adopts its own plan, provided it violates no constitutional requirement."

We therefore conclude that Section 10 of the Charter as amended is not in conflict with **Article XVII, Section 1 of the Constitution of the State of Ohio.**

The question whether the charter amendment, effective from the date of its certification to the Secretary of State, October 3, 1953, governs and controls the placing of the names of candidates on the official ballot at the general municipal election to be held November 3, 1953, despite the fact that candidates were voted on and nominated in accordance with the old Charter provision in effect at the time of the primary election on September 29, 1953, presents a more difficult problem.

There can be no doubt that the charter provided at the time when these relators were voted on at the primary election that "the number of candidates for any office at any regular municipal election—in each ward—shall be the two candidates on the primary election ballot receiving the highest number of votes at the primary election. The name of each person who is nominated in compliance herewith shall be printed on the official ballot at the general election * * *."

At the close of the voting on primary day, these relators

were duly nominated candidates for the office of councilman of their respective wards and had acquired the privilege of having their names printed and placed on the official ballot at the general municipal election to be held November 3, 1953.

However, on October 3, 1953, the new charter amendment became effective. Its schedule when submitted to the voters for approval stated that "Section 10 of the charter be amended for the purpose of nominating officers to be elected at the General Election **in the year 1953** * * *." (Emphasis ours )

If Section 10 as amended is to be applied to the general election on November 3, 1953 these relators do not qualify as candidates for the office of councilman of their respective wards and their names cannot be placed on the official ballot.

It, therefore, is manifest that if the charter amendment controls the status of these relators for the general municipal election of November 3, 1953, their privileges as candidates at such general election ceased to exist and to that extent the charter amendment would be retrospective in effect.

Constitutions, as a general rule, are interpreted to operate prospectively and not retrospectively unless a contrary intention clearly appears.

**8 O. Jur., 172, Sec. 70:**

"It is held that, for a constitutional provision to have a retrospective effect, such an intent must be manifest beyond reasonable question, on the face of the instrument."

In our opinion the schedule to the charter amendment stated a retrospective purpose when it submitted to a vote of the people the question whether existing "Section 10 of the charter be amended for the purpose of nominating officers to be elected at the general election in the year 1953 " This was voted on simultaneously with the charter amendment. Section 10 as amended, as a consequence, controls the nomination of candidates for the ensuing general municipal election and supplants and supercedes any nominations not in accordance with its specific provisions.

"Constitutions, as well as statutes, are construed prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest beyond reasonable question."

Shreveport v. Cole, 129 U. S. 36.

Relators claim that even though the charter amendment be interpreted to affect a nomination of the relators retrospectively it is void pro tanto because under the general principle of law no legislation for retroactive or ex post facto operation can disturb, impair or nullify vested rights acquired under former law.

That principle of law has no application here for the reason that no person holding office under our system of government has any vested right to the same. Any office created by the will of the people can be abolished at any time by the will of the people. There being no vested right in a public office, can there possibly then be a vested right in the mere nomination to office? The people have the power to give and the people have the power to take away. This, in effect, they did by voting upon the amendment to Section 10 of the charter at the same time at which they nominated officers under Section 10 as it existed prior to said charter amendment.

A comparable question was dealt with by the supreme court in the case of **State ex rel v. Schirmer, 131 Oh St 455.** In that case, a candidate for Judge of the Common Pleas Court circulated and finally filed with the board of elections petitions for the office which he sought which were sufficient to entitle him under the law then in existence to have his name placed on the ballot. Thereafter, in a special session of the legislature, the law was repealed under which he had filed for the office and the office vacated. A mandamus action was filed to compel the board of elections to place his name on the ballot inasmuch as he had become a candidate prior to the repeal of the law. The court at page 456 in denying the relator's prayer for a writ, said:

"The court of appeals found that relator by reason of filing such petition acquired no vested, constitutional or other right to have his petition considered by respondents for an office provided for by the repealed section, that such office ceased to exist and had been abolished; and that relator's name should not, therefore, be placed upon the ballot for an office which had been abolished subsequent to the filing of his nominating petition and previous to the election covering such office. A writ of mandamus was denied by the court of appeals."

We wish to emphasize the proposition that this court, in considering the issues here involved, is not concerned with the wisdom of the legislation nor can it substitute its judgment for that of the people of the City of Cleveland who have adopted the charter amendment by majority vote as provided by law. The power resides in the people to change their municipal charter as they see fit, and no court has the right to override a clearly expressed desire of the people except upon a clear showing that such action does violence to some constitutional provision. See **State ex rel v. Krause, 131 Oh St 97,** bottom of **page 100.**

It is therefore the unanimous conclusion of this court that the relators have not shown a clear legal right to compel respondents to print and place their names for the office of

councilman of their respective wards of the City of Cleveland on the ballot at the ensuing general election to be held November 3, 1953 and that the writ of mandamus prayed for accordingly should be denied. Writ denied. Exception of relators noted.

HURD, PJ, KOVACHY, J, SKEEL, J, concur.