[Cite as *Greene v. Cuyahoga Cty.*, 195 Ohio App.3d 768, 2011-Ohio-5493.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95790**

## GREENE ET AL.,

APPELLANTS,

v.

## CUYAHOGA COUNTY ET AL.,

APPELLEES.

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-729893

**BEFORE:** Trapp, J., Cannon, P.J., and Grendell, J.

**RELEASED AND JOURNALIZED:** October 27, 2011

**ATTORNEYS:**

Zagrans Law Firm, L.L.C., and Eric H. Zagrans, for appellants.

William D. Mason, Cuyahoga County Prosecuting Attorney, and David Lambert, Charles E. Hannan Jr., and Patrick J. Murphy, Assistant Prosecuting Attorneys, for appellees.

MARY JANE TRAPP, Judge.

{¶ 1} This case stems from the Cuyahoga County voters' decision in November 2009 to abolish the county's statutory form of government and replace it with a charter government. One of the plaintiffs below and the sole appellant in this appeal, Norman G. Lange, a Cuyahoga County voter, sued along with two other voters and then County Recorder, Judge Lillian Greene (Retired), claiming that Judge Greene and other county officials were being unconstitutionally removed from office before the end of their terms.

{¶ 2} The voters of Cuyahoga County are empowered by the Constitution to change the form of their government as they see fit. Despite plaintiffs' efforts to frame their legal challenge as one implicating the constitutional prohibition against retroactive law, the core issues in this case are (1) whether the elected officers have a vested property interest right in the offices they occupy, which would prohibit the voters from abolishing their offices midterm and (2) who has standing to challenge the constitutionality of the new county charter.

{¶ 3} While at first blush the arguments advanced by the plaintiffs may be appealing, Ohio law does not recognize an officeholder's vested right in the office. As observed by Thomas Jefferson, "when a man assumes a public trust he should consider himself as public property."[1] Neither does Ohio law recognize an elector's right to have an elected officer complete his or her term in the office. The consequences of the voters' decision to change the form of government may be harsh for the officeholders, who had made a commitment to the public that they would serve in that office and expended time and money to be elected to a four-year term. County offices, however, are a public privilege and not a property right. The Cuyahoga County Charter ("the charter") could have

3

provided a remedy for the officeholders whose terms are abolished in midterm, but the drafters chose not to; and this court cannot provide redress. Therefore, we affirm the trial court's decision granting summary judgment in favor of defendants.[2]

**Substantive Facts and Procedural History**

{¶ 4}    In November 2009, the voters of Cuyahoga County adopted the charter, which replaces the county's statutory form of government with a new governing structure anchored by an elected county executive and an elected 11-member council. The county executive and county council have the duties and responsibilities previously performed by county commissioners. The county executive appoints individuals, subject to council confirmation, to perform the duties previously performed by certain elected officeholders, including the county recorder. The former county offices would be abolished when the appointed individual took office on or after January 1, 2011.

{¶ 5}    Then County Recorder, Judge Lillian Greene, an elected officeholder whose four-year term would be terminated before its expiration date when the new form of government took effect, together with several electors, Norman G. Lange, Steve J. Lewis, and Janis Sapp, filed their lawsuit in June 2010. They claimed that the charter provisions abolishing elected offices in midterm constitute retroactive law and are therefore unconstitutional. They maintained that the officeholders have a right under the Ohio Constitution to fill the remainder of their elected terms of office and, further, that electors of the county have "a vested constitutional right to expect that an elected public official will hold office for the entire statutory term to which he or she was elected."

{¶ 6}    We begin our analysis with the constitutional and statutory basis of the structure of

---

[1] Attributed to Thomas Jefferson in a conversation with Baron Humbolt in B.L. Rayner, Life of Jefferson (1834) 356.

[2] All 12 judges from the Eighth District Court of Appeals recused themselves from the case. The instant panel from the

4

Cuyahoga County's government before and after the county electors' adoption of its charter.

## Statutory Form of County Governance

{¶ 7} A county in Ohio has historically been regarded as a political subdivision of the state. See *Schaffer v. Bd. of Trustees of Franklin Cty. Veterans Memorial* (1960)*, 171 Ohio St. 228, 230; R.C. 2744.01. Article X of the Ohio Constitution provides for the organization of the counties. Article X, Section 1 states the following:

{¶ 8} "The general assembly shall provide by general law for the organization and government of counties, and *may provide by* general law alternative forms of county government. No alternative form shall become operative in any county until submitted to the electors thereof and approved by a majority of those voting thereon under regulations provided by law. Municipalities and townships shall have authority, with the consent of the county, to transfer to the county any of their powers or to revoke the transfer of any such power, under regulations provided by general law, but the rights of initiative and referendum shall be secured to the people of such municipalities or townships in respect of every measure making or revoking such transfer, and to the people of such county in respect of every measure giving or withdrawing such consent." (Emphasis added.)

{¶ 9} Pursuant to the constitutional grant of authority, the General Assembly passed laws, codified under Title III of the Ohio Revised Code, that prescribe a general structure of county governance for those counties without a charter. The offices created by the General Assembly include the board of county commissioners, prosecuting attorney, sheriff, coroner, engineer, recorder, auditor, treasurer, and the clerk of court.

## Alternative Form of County Governance Permitted

{¶ 10} The Ohio Constitution, however, permits the voters to adopt home rule and change

---

Eleventh District Court of Appeals sits by assignment.

5

the form of county governance through the adoption of a charter. This is set forth in Article X, Section 3, which governs a county charter and its approval by voters. Article X, Section 3 states:

{¶ 11} "The people of any county may frame and adopt or amend a charter as provided in this article but the right of the initiative and referendum is reserved to the people of each county on all matters which such county may now or hereafter be authorized to control by legislative action. Every such charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election. It shall provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law. Any such charter may provide for the concurrent or exclusive exercise by the county, in all or in part of its area, of all or of any designated powers vested by the constitution or laws of Ohio in municipalities; it may provide for the organization of the county as a municipal corporation; and in any such case it may provide for the succession by the county to the rights, properties, and obligations of municipalities and townships therein incident to the municipal power so vested in the county, and for the division of the county into districts for purposes of administration or of taxation or of both. Any charter or amendment which alters the form and offices of county government or which provides for the exercise by the county of power vested in municipalities by the constitution or laws of Ohio, or both, shall become effective if approved by a majority of the electors voting thereon. In case of conflict between the exercise of powers granted by such charter and the exercise of powers by municipalities or townships, granted by the constitution or general law, whether or not such powers are being exercised at the time of the adoption of the charter, the exercise of power by the municipality or township shall prevail. A charter or amendment providing for the exclusive exercise of municipal powers by the county or providing for the succession by the county to any property or obligation of any municipality or township without the consent of the legislative

authority of such municipality or township shall become effective only when it shall have been approved by a majority of those voting thereon (1) in the county, (2) in the largest municipality, (3) in the county outside of such municipality, and (4) in counties having a population, based upon the latest preceding federal decennial census of 500,000 or less, in each of a majority of the combined total of municipalities and townships in the county (not included within any township any part of its area lying within a municipality)."

## Cuyahoga County's Change of County Governance

{¶ 12} Although Article X of the Ohio Constitution was amended in 1933 to permit counties in the state to adopt home rule, Cuyahoga County has historically operated under the statutory government form pursuant to Article X, Section 1 of the Ohio Constitution and Title III of the Ohio Revised Code.[3] The elected nonjudicial officers of the county consisted of the auditor, recorder, treasurer, clerk of court, sheriff, coroner, engineer, prosecuting attorney, and three county commissioners. These officers were elected to four-year terms in the general elections held in November every two years.

{¶ 13} In the November 3, 2009 general election, Cuyahoga County voters exercised the right to adopt home rule granted in Article X, Section 3 of the Ohio Constitution and ratified "the Charter of Cuyahoga County." The charter, effective on January 1, 2010, abolished the existing statutory county governance and adopted a new architecture of county government.

---

[3] See Cianca, Home Rule in Ohio Counties: Legal and Constitutional Perspectives, 19 U. Dayton L.Rev. 533 (1994), fn. 1. Following the amendment, the county voters made an attempt in 1935 to adopt a charter; the proposed charter failed, however, because it did not garner the required votes. See *State ex rel. Howland v. Krause* (1936), 130 Ohio St. 455.

{¶ 14} Pursuant to the charter, the county executive and the 11 members of the county council were to be elected in the November 2, 2010 general election for four-year terms commencing January 1, 2011.

{¶ 15} Moreover, Article XIII of the charter provided for the transition from the county's statutory form of government to the new charter government. Essentially, the charter abolished the elected nonjudicial county offices—with the exception of the county prosecutor—when the new county executive, the council members, and the Article X appointees assumed their offices on or after January 1, 2011. This was achieved through the provisions in Sections 13.01 and 13.02 of the charter, the constitutionality of which is challenged by the plaintiffs in this case.

{¶ 16} Section 13.01 ("Offices Abolished") provides:

{¶ 17} "As of the date when any officer elected or appointed pursuant to this Charter assumes an office that succeeds to the powers and duties of a predecessor office, *the corresponding predecessor office is abolished*, and the duties of those officers shall be assumed by the respective officers as provided herein." (Emphasis added.)

{¶ 18} Section 13.02 provides: "No primary election shall be held in 2010 for any elected office that is abolished pursuant to this Charter. * * *."

{¶ 19} Under these provisions, the county offices that existed before the adoption of the charter are abolished and the term of any incumbent of the abolished offices would terminate as of the date on which the successor officer assumed office, on or after January 1, 2011.

### The Constitutional Challenge

{¶ 20} In June 2010, Judge Greene, elected in November 2008 as the county recorder, and three electors, Steve J. Lewis, Janis Sapp, and Norman Lange, filed a complaint in the Common Pleas Court of Cuyahoga County, seeking declaratory and permanent injunctive relief.

{¶ 21} The plaintiffs sought to enjoin Sections 13.01 and 13.02 from going into effect until the unexpired terms of office of the elected county officials ended in 2013. The defendants named in the lawsuit are Cuyahoga County; William D. Mason, the Prosecuting Attorney of Cuyahoga County; and Richard Cordray, then Attorney General of Ohio. Sapp subsequently withdrew from the suit, and the remaining plaintiffs dismissed the Ohio Attorney General as a party.

{¶ 22} Plaintiffs asserted two variations on a retroactivity theme as the bases for their constitutional challenge. They alleged that Sections 13.01 and 13.02, which canceled the 2010 election for the county sheriff and abolished the offices of county commissioner, auditor, recorder, treasurer, clerk of courts, sheriff, coroner, and engineer, in the midst of unexpired terms, violate the vested constitutional rights of both voters and elected county officials.

{¶ 23} While disclaiming an argument that an officeholder has a "vested property interest or protected property right to hold an office," the plaintiffs attempted to circumvent the long-established law by asserting a right to complete "elected terms of office" rather than a right to hold the "office" itself. The plaintiffs also claimed that an elector has a concomitant constitutional right to expect that an elected official will hold the office for the entire term.

{¶ 24} Second, they claimed that these charter provisions are constitutionally infirm because they retroactively "change the legal consequences" of the November 2008 election, when the officers were elected to a four-year term, which does not expire until 2013. They maintained that the voters had a "reasonable expectation of finality" once the 2008 election results were certified, and, according to this second variation on a retroactivity theme, the provisions can only prospectively apply to abolish offices whose terms begin after the adoption of the charter. According to their reasoning, year 2013 is the only time when these elected officers with unexpired terms could be constitutionally replaced with officials appointed by the county executive.

9

**{¶ 25}** Plaintiffs asked the trial court to declare the charter provisions abolishing the county offices before the end of their terms unconstitutional and to enjoin defendants from abolishing the offices before the expiration of their terms.

**{¶ 26}** The parties filed cross-motions for summary judgment. Two days following a hearing on September 8, 2010, the trial court denied plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment. On September 30, 2010, Lange, only, filed this instant appeal, assigning the following errors:

**{¶ 27}** "[1.] The trial court erred in concluding that the termination of elected statutory county offices before their respective terms had expired neither imposed a retroactive effect on the results of a prior election, nor upset or burdened the settled results of a past occurrence having a reasonable expectation of finality."

**{¶ 28}** "[2.] The trial court abused its discretion in denying Judge Greene's request to employ outside counsel at the county's expense pursuant to R.C. 305.14 since she would normally be represented in her capacity as a county officer by the county prosecutor's office."

### Summary-Judgment Standard of Review

**{¶ 29}** We review de novo an appeal from summary judgment. *Baiko v. Mays* (2000), 140 Ohio App.3d 1. Therefore, "we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Cachat v. IQS, Inc.*, 8th Dist. No. 95501, 2011-Ohio-3057, ¶ 15. Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that conclusion is adverse to the nonmoving party.

10

**Statutory Offices Can Be Abolished**

{¶ 30} To facilitate the transition to the new form of government, the charter provisions required that no election be held in 2010 for offices to be abolished pursuant to the charter, and it abolished the existing county offices on or after January 1, 2011, when the appointed county officers take office.

{¶ 31} In Ohio, the law permits the statutory offices to be abolished, even in midterm. Article II, Section 20 of the Ohio Constitution provides:

{¶ 32} "The General Assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer *during his existing term*, *unless the office be abolished.*" (Emphasis added.)

{¶ 33} As the Supreme Court of Ohio recognized, this constitutional provision is applicable to statutory county offices. *State ex rel. Fox v. Raine* (1892), 49 Ohio St. 580 (county commissioners); *State ex rel. Mikus v. Roberts* (1968), 15 Ohio St.2d 253 (county engineer).

{¶ 34} Thus, the abolition of statutory county offices created under Title III of the Ohio Revised Code is sanctioned by the express terms of the Ohio Constitution.

{¶ 35} The Supreme Court of Ohio has also recognized that the power to abolish an office is as unrestricted as the power to create the office. In *Geisinger v. Cook* (1977), 52 Ohio St.2d 51, a case involving not Title III statutory offices but statutorily created municipal-court judgeships, the plaintiff had been elected to the office of Troy Municipal Court judge. Before his term expired, the General Assembly created the Miami County Court, the jurisdiction of which included the municipality of Troy, and abolished the office of the municipal judge of the Troy Municipal Court.

{¶ 36} The Supreme Court of Ohio affirmed the General Assembly's power to abolish offices of municipal-court judges in midterm, reasoning that these offices were created by the

11

General Assembly, not by the Constitution. The court noted that "[t]he framers of the Ohio Constitution intended to leave the power to abolish as full and unrestricted as was the power to create." *Geisinger* at 54.

{¶ 37} Although *Geisinger* involved the office of a municipal court judge and although it was the General Assembly that abolished the office, the holding applies here.

{¶ 38} The statutory county offices are created by the General Assembly, not by the Constitution. Therefore, the voters of Cuyahoga County are empowered by Article X, Section 3 of the Ohio Constitution to adopt home rule and abolish the statutory offices, even in midterm. See also *Elyria v. Vandemark* (1919), 100 Ohio St. 365 (the authority to create an office and the power to abolish the office are coexistent, and hence the tribunal authorized to create an office may abolish that office at any time it chooses, either during or at the end of the term of any incumbent of that office); *State ex rel. Atty. Gen. v. Jennings* (1898), 57 Ohio St. 415 (the city council had the power to repeal the former ordinance and all the offices created by it; when the offices were thus abolished, the incumbents ceased to be officers, for there can be no incumbent without an office); and *State ex rel. Flinn v. Wright* (1857), 7 Ohio St. 333 (the General Assembly has full power to control, modify, and abolish the courts and judicial offices of the state, except so far as its powers in this respect are restrained and limited by the provisions of the Constitution).

**Public Officers Have No Vested Property Interest Right in the Office**

{¶ 39} That public offices can be eliminated even in midterm is consistent with the long-established principle in Ohio that public officeholders do not have a vested property interest right in the offices. While Lange adroitly advocates that we recognize an officeholder's constitutional right to complete a *term of office* as opposed to a vested constitutional property right in the *office itself*, his substitution in terminology is unavailing because it presents a distinction without a difference.

{¶ 40} A county office is a public privilege and not a property right. *State ex rel. Trago v. Evans* (1957), 166 Ohio St. 269, 275. "The term office implies a duty and a discharge of that duty. Public offices are created for the purpose of effecting the ends for which government has been instituted, which are the common good, and not for the profit, honor, or private interest of any one man, family or class of men. In our form of government it is fundamental that a public office is a public trust, or 'a public charge or employment,' and not a vested property right * * *." *State ex rel. Gordon v. Barthalow* (1948), 150 Ohio St. 499, 508, quoting 2 McQuillin on Municipal Corporations (2d Ed.Rev.) 54, Section 436.

{¶ 41} "In Ohio, the incumbent of an office has no proprietorship, or right of property, therein." *Trago* at 274. In general, " '[o]ffices are held, in this country, neither by grant nor contract, nor has any person a vested interest or private right of property in them.' " Id., quoting *Steubenville v. Culp* (1882), 38 Ohio St. 18, 23. " '[I]f the office [is] created by the Legislature, it may, in the absence of express constitutional restriction, be abolished or suspended; and yet the officer can not claim compensation, for the loss of his office. He has no property, or individual right in it. He is but a trustee for the public; and whenever the public interest requires that the office should be abolished, or the duties of the office become unnecessary, the incumbent can not object to the abolition of the office.' " Id., quoting *Knoup v. Piqua Branch of State Bank of Ohio* (1853), 1 Ohio St. 603, 616.

**The Retroactivity Claim**

{¶ 42} Lange concedes that public officeholders have no vested property interest right in their offices. But as we noted earlier, shifting the focus from the officeholder's expectation to the voter's expectation is an ineffective artifice designed to divert attention. He attempts to frame the legal issue in such a way as to implicate the constitutional prohibition against retroactive law,

claiming that the charter provisions structuring Cuyahoga County's transition into the new form of government have a retroactive effect because they impair a vested right.

{¶ 43} We have trouble comprehending the applicability of the principles of retroactive law advanced by Lange to a case in which the voters, exercising their constitutional right to adopt home-rule power, opted to change the form of government in its entirety. The charter provisions being challenged are not the archetype of legislation regularly scrutinized under a retroactivity analysis. A retroactivity challenge usually involves new restrictions or requirements that take away a vested right or impose additional burdens or obligations as to an event or transaction that occurred in the past.

{¶ 44} Here, Section 13.01 involves a unique application—to facilitate the revamping of the county government, it abolishes all the existing county offices on or after a specified future day. As such, the challenged charter provisions are not easily analyzed in retroactivity terms.

**The Two-Part Retroactivity Analysis: Is the Provision Expressly
Retroactive and Is It Substantive or Remedial?**

{¶ 45} Article II, Section 28 of the Ohio Constitution provides that "the General Assembly shall have no power to pass retroactive laws * * *." "This constitutional prohibition against retroactive laws is equally applicable to charter amendments." *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 73, citing *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597, 600.

{¶ 46} "When analyzing whether a statute is unconstitutionally retroactive, we use a two-part test. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, ¶ 7-9. In the first part of the test, we 'ask whether the General Assembly expressly made the statute retroactive.' Id. at ¶ 8. See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus ('The issue of whether a statute may constitutionally be applied retrospectively does not arise unless

14

there has been a prior determination that the General Assembly specified that the statute so apply')."

*State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 8.

{¶ 47} "A statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48. If the law's retroactive application is not clearly expressed, the constitutional analysis ends. *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860. " 'The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution.' " *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 398, quoting *Van Fossen*, paragraph one of the syllabus; see also *State ex rel. Youngstown*, 72 Ohio St.3d 69; *State ex rel. Plavcan v. School Emps. Retirement Sys. of Ohio* (1994), 71 Ohio St.3d 240, 242.

{¶ 48} In the second part of the test, we are required to determine whether the statutory provisions are substantive or remedial. *Williams* at ¶ 8, citing *Hyle* at ¶ 8. Substantive laws may not be applied retroactively. It is long established that "a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right." *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 37, citing *Van Fossen,* 36 Ohio St.3d at 107, 522 N.E.2d 489. See also *Herrick v. Lindley* (1979), 59 Ohio St.2d 22, 27; *Rairden v. Holden* (1864), 15 Ohio St. 207, 210.

{¶ 49} "Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing

15

right." *Ackison v. Anchor Packing Co*., 120 Ohio St.3d 228, 2008-Ohio-5243, ¶ 15, quoting *State v. Cook* (1998), 83 Ohio St.3d 404, 411, citing *Van Fossen* at 107.

**{¶ 50}** Simply put, in reviewing a claim that a law is unconstitutionally retroactive, the court first determines whether the new legislation is expressly made to apply retrospectively. If so, the court must determine whether the law is substantive or remedial.

### The Charter Is Not Expressly Made Retroactive

**{¶ 51}** Here, the charter provisions do not state expressly that they are to be applied retrospectively. Section 12.01 of the charter states: "The effective date of this Charter shall be January 1, 2010 except as otherwise provided herein with respect to particular officers, offices, or functions." Section 13.01 states: "As of the date when any officer elected or appointed pursuant to this Charter assumes an office that succeeds to the powers and duties of a predecessor office, the corresponding predecessor office is abolished, and the duties of those officers shall be assumed by the respective officers as provided herein."

**{¶ 52}** The effective date of the charter is January 1, 2010, and it abolishes the existing county offices a year later, on or after January 1, 2011, when the appointed officers take office. Therefore, the challenged charter provisions cannot meet the threshold requirement that they are "expressly made retroactive."

**{¶ 53}** An illuminating example of a retrospectively applied law in an election matter was provided in *Mirlisena*, 67 Ohio St.3d 597. In that case, the voters passed a charter amendment limiting the number of two-year terms a person could serve on the city's council. The charter amendment stated that "the provisions of this amendment shall apply commencing with the nominations for the election for the council term commencing December 1, 1993, and that *consecutive terms of service on the council to which members were elected prior to December 1,*

16

*1993 shall be counted in determining eligibility for office * * *.*" (Emphasis added.) Id. at 598. Pointing to the above express retrospective language, the court held that the amendment was retroactive. Id. at 600. In contrast, nothing in the challenged charter provisions expressly makes their application retroactive.

{¶ 54} In arguing that the charter provisions are applied retroactively, Lange cites *Norton v. Richards*, 9th Dist. No. 24557, 2009-Ohio-3868, to support the claim that the charter, adopted in 2009 and effective in 2010, changes the results of the November 2008 election and is therefore retroactive. Appellant maintains that a statute or charter provision that "impairs or nullifies the prior results achieved under existing laws is considered retroactive."

{¶ 55} In *Norton*, the voters of the city of Norton passed in 2008 a charter amendment under which the number of at-large council seats would be reduced from three to one and the remaining seat would be held by the at-large candidate who received the highest number of votes in the 2007 election. The Ninth District held that the contested provision ran afoul of the principles of retroactivity, because the charter provision sought to reduce the at-large council members in 2009 based on an election that had occurred prior to that point. Id. at ¶ 12.

{¶ 56} *Norton* has no application here. There, the election results showed that three of six candidates were seated to three positions, and later, only one of the three was selected to complete the term. The Ninth District considered the contested provision retroactive not because the provision "changed the result" of the prior election but because the provision reduced the council positions in 2009 "*based on* an election that had occurred prior to that point." (Emphasis added.) Id. at ¶ 12. The court stressed that in order for the reduction of the number of at-large council positions to be constitutional, it "must be done in a manner that does not *rely on* an event that occurred prior to deciding that such a reduction was necessary." (Emphasis added.) Id. at ¶ 14. In contrast, in the

instant case, the abolition of the existing offices is not based on and does not rely on the 2008 election. Therefore, *Norton* is inapposite to the situation before us.

{¶ 57} Because the application of the charter provisions are not expressly made retroactive, our constitutional analysis ends here.

**Second Prong of Retroactivity Analysis**

{¶ 58} Even if we were to reach the second part of the constitutional analysis, the provisions are not "substantive" for purposes of a retroactivity claim.

{¶ 59} "[A] statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right." *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, at ¶ 9, citing *Van Fossen*, 36 Ohio St.3d 100. The charter provisions do none of these.

{¶ 60} The charter provisions cannot be "substantive" because, as we explained, the county officeholders do not have vested property-interest rights in the offices. Neither can the charter provisions be said to impose "new or additional burdens, duties, obligations, or liabilities as to a past transaction." Lange argues that the charter provisions abolishing the offices in midterm "burdened" a "past transaction," i.e., the November 2008 election, in that the provisions "attach new legal consequences to" the 2008 election. However, the only real legal consequence here is the officers' loss of right to the remaining term in their office. Such a right, however, is not a vested right recognized in Ohio.

{¶ 61} In arguing that the charter provisions "attached a new burden to a past transaction," appellant cites *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279. In that mandamus case, relator was convicted of a felony in 1978. In 1983, the legislature enacted a new law that prohibited an award of compensation to victims who had been themselves convicted of a felony. In 1984,

18

relator became the victim of a crime and applied for victims-of-crime compensation. After being denied an award, he filed a mandamus action, claiming that the new law was retroactive and arguing that his felony was a past transaction or consideration to which the law attached a new disability. Id. at 281. The Supreme Court of Ohio rejected that claim, stating the following:

**{¶ 62}** "[A] later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration, if it did not create a vested right, created at least a reasonable expectation of finality. * * * [T]he commission of a felony is not [such a transaction]. * * * [F]elons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." Id. at 281.

**{¶ 63}** Lange does not articulate how *Matz* is applicable to the voters' decision to change their form of county government, and we fail to see any relevance of that case.

**{¶ 64}** Ultimately, it is inconsistent for Lange to concede that an officeholder does not have a vested property-interest right in the office but then claim that the charter provisions abolishing the office are "substantive." Invalidating the charter provisions on the basis of retroactivity would, in effect, accord an elected officer a vested right in the office, an outcome not sanctioned by the well-established law in this state.

**{¶ 65}** But our analysis does not end here. We will also address part two of his argument that the voters have a vested constitutional right to expect officeholders to hold their offices for the entire statutory term, as we discuss the broader issue of Lange's standing. These two questions are intertwined.

**Lange's Standing and His Reasonable Expectation of Finality of Election Results Argument**

**{¶ 66}** The only party that could allege a vested property interest in the office is the county recorder, Judge Greene, who was serving an unexpired term when the charter went into effect. Judge Greene , however, did not appeal from the trial court's judgment. The sole appellant in this appeal is Lange, an elector in Cuyahoga County. His standing in the instant lawsuit challenging the county's change of government form is the proverbial "elephant in the room" in this appeal, to which we now turn.[4]

**{¶ 67}** The issue of standing concerns "whether the party has alleged such a personal stake in the outcome of the controversy, as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, syllabus.

**{¶ 68}** " 'A person has standing to sue only if he or she can demonstrate injury in fact, which requires showing that he or she has suffered or will suffer a specific, judicially redressible injury as a result of the challenged action.' " *State ex rel. N. Ohio Chapter of Associated Builders & Contrs., Inc. v. Barberton City School Dist. Bd. of Edn.*, 188 Ohio App.3d 395, 2010-Ohio-1826, ¶ 10, quoting *Fair Hous. Advocates Assn., Inc. v. Chance*, 9th Dist. No. 07CA0016, 2008-Ohio-2603, ¶ 5. See also *Engineering Technicians Assn. v. Ohio Dept. of Transp.* (1991), 72 Ohio App.3d 106, 110-111.

**{¶ 69}** Lange claims that "each elector of the County has a vested constitutional right to expect that an elected public official will hold office for the entire statutory term to which he or she was elected." He argues that "[t]o permit the abolishment of public offices in the middle of their elected terms of office would * * * 'thwart the will of the people' who elected these public officials

---

[4]We note that defendants raised the issue of plaintiffs' standing in pursuing the lawsuit in their motion for summary judgment. The trial court ruled in favor of defendants on the ground that the contested provisions are prospective, without specifically addressing plaintiffs' standing.

to four-year terms of office because it would retroactively repeal and nullify the results of the November 2008 general election." He maintains that the electors in that election have the right and "settled expectation" under the Ohio Constitution that "their decision in electing county officials to fill four-year terms of office will be respected and carried out."

{¶ 70} Lange appears to claim that he has a personal stake in the outcome of the instant controversy because he, as an elector, is entitled to a settled expectation of the outcome of the 2008 election results. In support of his claim of right to a reasonable expectation of finality, he cites a property-tax case, *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2001), 91 Ohio St.3d 308.

{¶ 71} In that case, a county board of revision dismissed a property-tax complaint because the complaint was not filed by a lawyer as required by the existing law at the time. Subsequently, Sub.H.B. No. 694 changed the law, allowing a nonlawyer to file property-tax complaints and also authorizing the refiling of complaints challenging property valuations for tax years prior to the effective date of the bill.

{¶ 72} The Supreme Court of Ohio held that the new law may not be retroactively applied to permit the refiling of once-dismissed complaints challenging property valuations for tax years prior to the effective date of Sub.H.B. No. 694, because such an application violated the prohibition against the enactment of retroactive legislation. The court reasoned that the tax officials who opposed reduction in assessed valuations when the first complaints were dismissed could have concluded that the dismissals of these complaints ended the valuation proceedings and established the value of the property for the tax year, thereby creating a reasonable expectation of finality. Id. at 317-318.

{¶ 73} We fail to see any relevance of *Cincinnati School Dist. Bd. of Edn.* to the case sub judice. In that case, the new law created a burden on the county tax officials to again defend the previously dismissed complaints challenging property valuation and, potentially, to refund taxes if the complainant was successful. The tax officials' expectation of the finality of a property's taxable value after the owner's complaint had been dismissed is quantitatively and qualitatively different from any alleged expectation of finality of an elector once the results of an election are certified and those elected are installed in office. The analogy is simply unavailing.

{¶ 74} *Cincinnati School Dist. Bd. of Edn.* does not support the recognition of any constitutionally protected right of an elector to a reasonable expectation of finality of election results. More importantly, it simply defies logic for one to claim that the voters' expectation of finality of the 2008 election is disrupted, when it is the voters themselves who exercised their collective will and abolished certain elected offices, thereby obviating the need for subsequent elections to seat an officeholder.

{¶ 75} As an elector, Lange does not have a right cognizable by law, constitutional or otherwise, to demand that public officeholders complete their elected terms. Because he has not alleged a personal stake in the outcome of the instant controversy or demonstrated that he has or will suffer a specific injury that is redressible by the court, he does not even have the requisite standing to pursue this appeal.

**Conclusion**

{¶ 76} In *State ex rel. Pecyk v. Greene* (1953), 102 Ohio App. 297, this court entertained a challenge to an amendment to the charter of the city of Cleveland, which changed the selection process of city councilmen. Because of the amendment, candidates who had won the primary election for the city council were prevented from having their names placed on the general-election

22

ballot; the amendment was passed by the voters in the very same primary election. The candidates claimed that the amendment could not be retroactively applied to them. This court disagreed, stating, "[N]o person holding office under our system of government has any vested right to the same. Any office created by the will of the people can be abolished at any time by the will of the people. * * * The people have the power to give and the people have the power to take away." Id. at 304.

{¶ 77} These Lockean principles succinctly put by this court in a charter challenge still ring true today. "[E]very man, by consenting with others to make one body politic under one government, puts himself under an obligation, to every one of that society, to submit to the determination of the *majority,* and to be concluded by it; or else this *original compact,* whereby he with others incorporates into *one society,* would signify nothing * * *." (Emphasis added.) John Locke, Second Treatise of Civil Government, Section 97.

{¶ 78} The first assignment of error is without merit.

### Employment of Outside Counsel at Public Expense

{¶ 79} Appellant, Lange, also appeals the trial court's decision denying Judge Greene's motion to have counsel appointed at public expense. He claims that the trial court "should have authorized the Board of County Commissioners under R.C. 305.14, to employ legal counsel to assist the county recorder in the prosecution of this action in which the recorder is a party and has an interest in the recorder's official capacity."

{¶ 80} Lange lacks standing to appeal the trial court's denial of Judge Greene's request to have outside counsel employed at public expense. See *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005 (a litigant must assert its own rights, not the claims of third parties, unless the claimant suffers its own injury in fact, possesses a sufficiently close relationship with the person who

possesses the right, and shows some hindrance that stands in the way of the claimant seeking relief).

Lange has not demonstrated his standing for asserting the alleged error on Judge Greene's behalf.

{¶ 81} Even if we were to consider the claim as if it were asserted by Judge Greene, we conclude that the trial court properly denied her request for an appointment of outside counsel at public expense.

{¶ 82} Pursuant to R.C. 309.09(A), the prosecuting attorney is the legal advisor of all county officers. Because the prosecuting attorney is one of the defendants named in the lawsuit, plaintiffs at the proceedings below requested an outside counsel at public expense pursuant to R.C. 305.14(A). That statute provides:

{¶ 83} "The court of common pleas, upon the application of the prosecuting attorney and the board of county commissioners, may authorize the board to employ legal counsel to assist the prosecuting attorney, the board, or any other county officer in any matter of *public business* coming before such board or officer, and in the prosecution or defense of any action or proceeding in which such board or officer is a party or has an interest, *in its official capacity*." (Emphasis added.)

{¶ 84} Thus, outside counsel can be employed at public expense only when public business is involved, that is, only for a public purpose or use. In *State ex rel. McClure v. Hagerman* (1951), 155 Ohio St. 320, the Ohio Supreme Court, addressing the use of municipal funds, stated that " 'a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation * * *.' " Id. at 325, quoting 37 American Jurisprudence, 734, 735.

{¶ 85} No public purpose is furthered by expending public funds to help any individual remain in an office when that office is abolished by the charter adopted by the voters. To do otherwise would be the ultimate irony—using public funds to prevent the public from carrying out

their collective will.

{¶ 86} The second assignment of error is without merit.

{¶ 87} For the foregoing reasons, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.

Judgment affirmed.

CANNON, P.J., and GRENDELL, J., concur.

DIANE V. GRENDELL, MARY JANE TRAPP, and TIMOTHY P. CANNON, JJ., of the Eleventh District Court of Appeals, sitting by assignment.

DIANE V. GRENDELL, Judge, concurring.

{¶ 88} I agree with the majority's conclusion that the Cuyahoga charter was not expressly retroactive. However, I write separately for three reasons.

{¶ 89} First, the proponents of the reorganizational charter provisions could have preempted this litigation by simply including language in the ballot initiative that recalled the previously elected county officials whose terms were shortened by the adoption of the charter. Such a provision would have made it clear that the voters intended to alter the 2008 election results.

{¶ 90} Second, it is necessary to address the majority's discussion of the second prong of the retroactivity test, which requires that the subject provision be "substantive." *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, at ¶ 8 (the second part of the retroactivity test "requires [the court] to determine whether the statutory provisions are substantive or remedial"). While I agree that the appellant must prove that the provision creating new elected offices must be substantive, I disagree with the majority's analysis on this issue.

**{¶ 91}** The law of Ohio clearly states that there is no vested right for an elected official to hold office. *Walton v. Montgomery Cty. Welfare Dept.* (1982), 69 Ohio St.2d 58, 64-65. The majority focuses mainly on this issue, finding that there is no vested right to hold office, and, therefore, the charter provisions are not substantive, such that the charter could be considered retroactive. However, it is important to emphasize that a vested right is not required if a law is impermissibly retroactive by imposing a new burden and interfering with an expectation of finality. See *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281 ("a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration, *if it did not create a vested right*, created at least a reasonable expectation of finality"). (Emphasis added.) *Cincinnati School Dist. Bd. of Edn v. Hamilton Cty. Bd. of Revision* (2001), 91 Ohio St.3d 308, 316-317 (while changes may be made to the law, such changes may not be made if they "bring with them new burdens" and create an expectation of finality).

**{¶ 92}** The majority finds that because the officials elected in 2008 did not have a vested right to their offices, no new legal consequences attached to the 2008 election. However, courts have found a provision to be substantive, even in the absence of a vested right. See *Norton v. Richards*, 9th Dist. No. 24557, 2009-Ohio-3868, at ¶ 23 (since the court concluded that the contested charter provision "attaches a new disability or burden to a past transaction, a transaction which held an expectation of finality," the court found that it "need not determine whether the voters or the Council members have a vested right"). Therefore, because it is clear in this case that there is no vested right for an elected official to hold office, this court's analysis must focus primarily on whether there was a new burden imposed, as well as an expectation of finality in the 2008 election results.

**{¶ 93}** Regarding the issue of an expectation of finality, the majority simply concludes that

26

electors do not have a "constitutionally protected" right to a reasonable expectation of finality. Such a statement is overly broad and precludes arguments introduced in cases such as *Norton*, where voters had an expectation that the results of a prior election would not be used to determine the results of a future election. 2009-Ohio-3868, at ¶ 22. Although *Norton* is distinguishable from the present case, this court should avoid concluding that electors can *never* have a right to a reasonable expectation of finality.

{¶ 94} While in some other cases voters may have had an expectation of finality, in the present case, the election's results were not changed, but the offices previously in existence were replaced by new offices. The voters have the right to change the form of their county government and, therefore, cannot have had an expectation of finality as to the prior 2008 election results.

{¶ 95} Finally, it is also important to address two related issues raised by the majority. The majority states that invalidating a charter on the basis of retroactivity is, in effect, a statement that an elected official has a vested right to his or her office. However, that is not the case. If voters adopted a charter explicitly eliminating offices, that would be an exercise of the voters' rights, but would still eliminate an elected official's right to office. Such an event did not occur here, because there was no provision in the charter expressly eliminating the officials' offices. However, as noted above, the emphasis should be on the rights of the voters and their rights and expectations with respect to their votes, not whether elected officials have a vested right to hold office.

{¶ 96} Additionally, the majority states that the voters in Cuyahoga County adopted the charter and therefore cannot now claim that the results of the 2008 election were disrupted. As noted above, this issue could have been preempted by a provision recalling the previously elected officials. In addition, while the majority essentially asserts that voters adopting a new charter must live with the consequences of adopting that charter, it does not automatically follow that the voters cannot

claim that prior election results have been improperly disrupted. If voters adopt an improperly retroactive provision in a charter, the provision must still be held invalid. See *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 73; *Citizens Against Rent Control v. Berkeley* (1981), 454 U.S. 290, 295 ("the voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation"). It is necessary for the courts to protect the voters from the consequences that may result from adopting unlawful charter provisions.

{¶ 97} For the reasons discussed above, I find that the charter was not retroactive and, therefore, the judgment of the trial court should be affirmed.

_____