OPINION *Page 2 
{¶ 1} Defendant-appellant, State of Ohio, appeals from the judgment of the Franklin County Court of Common Pleas declaring Amended Substitute Senate Bill No. 18 ("Am. Sub. S.B. No. 18" or "the bill"), enacted by the General Assembly on December 8, 2004, to be unconstitutional, and therefore null and void, in its entirety. Because (1) the bill was enacted in violation of the "one-subject rule" contained in Section 15(D), Article II of Ohio's Constitution, and (2) no primary portion of the bill can be discerned for purposes of severing other portions of the bill, we affirm.
I. Legislative Proceedings {¶ 2} S.B. No. 18 was introduced and first considered in the Senate on January 30, 2003. As introduced, the bill proposed to revise only R.C. 3735.27 "to change the composition of certain metropolitan housing authorities." On February 4, 2003, the Senate considered the bill for a second time and forwarded it for review to the Senate Committee on State and Local Government and Veterans' Affairs. On March 20, 2003, after making minor changes in the amendments proposed for R.C. 3735.27, the committee reported back to the Senate a substitute version of S.B. No. 18. On April 1, 2003, the full Senate considered and approved Sub. S.B. No. 18 as reported out of committee.
 {¶ 3} On April 2, 2003, the House of Representatives ("the House") received Sub. S.B. No. 18 from the Senate and introduced and considered the bill for the first time. One day later, April 3, 2003, the House considered Sub. S.B. No. 18 for a second time and referred it to the House Committee on Municipal Government and Urban *Page 3 
Revitalization. The House and Senate Journals, the official records of the proceedings of the House and Senate, indicate no further legislative action was taken on Sub. S.B. No. 18 in either chamber until December 8, 2004, late in the lame duck session of the legislature and more than 20 months after the bill was referred to the House committee.
 {¶ 4} On December 8, 2004, the House committee reported Sub. S.B. No. 18 back to the full House after adding several provisions that amended four existing statutes and created a new statute. Specifically, in addition to the existing revisions to R.C. 3735.27, the bill for the first time included provisions, as expressed in the bill's title, that: (1) amended R.C. 303.02, 303.161, 519.02 and 519.171 "to alter the purposes for and scope of county and township zoning regulations" and "to permit counties and townships to have landscaping and architectural standards in their zoning codes in any zone" (collectively, "the county and township zoning provisions"), and (2) enacted R.C. 3313.537 "to allow students enrolled in a community school sponsored by their school district to participate in extracurricular activities at the school district schools to which they otherwise would be assigned" ("the charter school students extracurricular activities provision").
 {¶ 5} After a minor amendment to the bill was approved on the House floor, the full House approved Am. Sub. S.B. No. 18 the same day it was reported out of committee. At 1:30 a.m. on December 9, 2004, and shortly before the Senate adjourned its legislative session, the full Senate concurred in the bill as the House amended and approved it. Am. Sub. S.B. No. 18 subsequently became law after the Governor filed it with the Secretary of State's office without his signature. *Page 4 
II. Constitutional Challenge in the Trial Court {¶ 6} Pursuant to Civ. R. 57 and R.C. 2721.02, the Akron Metropolitan Housing Authority ("AMHA") and the boards of trustees of 24 townships located in Medina and Lorain Counties ("the townships"), (collectively "plaintiffs"), sought declaratory relief by filing a complaint in the Franklin County Court of Common Pleas against the state and the General Assembly. Plaintiffs' complaint sought a declaration that Am. Sub. S.B. No. 18 is unconstitutional on three grounds under Article II of the Ohio Constitution, and thus null and void in its entirety: (1) the enacted bill contains multiple unrelated topics that share no common purpose, in violation of the one-subject rule of Section 15(D); (2) the Senate and the House did not consider each version of the bill on three different days, in violation of the three-consideration provision of Section 15(C); and (3) the enacted bill is a law of general nature that pertains only to plaintiff AMHA and does not have uniform operation throughout the state, in violation of the uniformity clause found in Section 26.
 {¶ 7} After dismissing the General Assembly as a party, the trial court entered judgment on August 14, 2007 declaring Am. Sub. S.B. No. 18 does not violate the uniformity clause, but violates the one-subject rule and three-consideration provision of Ohio's Constitution. Finding no section of the bill capable of being saved through severance, the court invalidated the entire bill as unconstitutional. On the state's motion, the court stayed its judgment pending the state's appeal to this court.
III. Assignments of Error {¶ 8} On appeal, the state assigns the following errors:
 First Assignment of Error: The court erred in declaring that S.B. 18 is unconstitutional in its entirety, when no party to this *Page 5 
case has standing to challenge R.C. 3313.537, R.C. 303.02 and R.C. 303.161.
 Second Assignment of Error: The trial court erred in granting summary judgment in favor of Plaintiffs on their claim that S.B. 18 violates the single subject clause.
 Third Assignment of Error: The trial court erred in granting summary judgment in favor of Plaintiffs on their claim that S.B. 18 violates the three considerations clause.
IV. Standing {¶ 9} The state's first assignment of error asserts the trial court erred in striking as unconstitutional the bill's amendments to R.C. 303.02 and 303.161 and its enactment of R.C. 3313.537, because none of the plaintiffs had standing to challenge the constitutionality of those specific provisions.
 {¶ 10} A party must have standing to be entitled to have a court decide the merits of a dispute. Cuyahoga Cty. Bd. of Commrs. v.State, 112 Ohio St.3d 59, 2006-Ohio-6499, at ¶ 22, citing Ohio Contrs.Assn. v. Bicking (1994), 71 Ohio St.3d 318, 320. As a prudential matter, standing is a question of whether a party "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." Secy. of State of Maryland v. Joseph H. Munson Co.,Inc. (1984), 467 U.S. 947, 956, 104 S.Ct. 2839. See, generally,Warth v. Seldin (1975), 422 U.S. 490, 95 S.Ct. 2197. As the Ohio Supreme Court explained in Fortner v. Thomas (1970), 22 Ohio St.2d 13, 14 "[i]t has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." As a result, "[i]t has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to *Page 6 
avoid the imposition by judgment of premature declarations or advice upon potential controversies. The extension of this principle includes enactments of the General Assembly." Id.
 {¶ 11} Accordingly, to have standing to challenge the constitutionality of a legislative enactment, a litigant must have a direct interest in the legislation of such a nature that the party's rights will be adversely affected by its enforcement. N. Canton v.Canton, 114 Ohio St.3d 253, 2007-Ohio-4005, at ¶ 11. The litigant must generally show it has "suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." State ex rel.Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451,469-470. Notwithstanding the general requirement for injury, standing is a self-imposed judicial rule of restraint, and courts "are free to dispense with the requirement for injury where the public interest so demands." Sheward, at 470. Whether established facts confer standing to assert a claim is a question of law, which we review de novo.Portage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106, 2006-Ohio-954, at ¶ 90.
 {¶ 12} Plaintiffs' amended complaint alleges that as a result of Am. Sub. S.B. No. 18, the members of the boards of trustees of plaintiff AMHA increased from five to six, a consequence that, as a matter of corporate governance, is undesirable because it increases the possibility of deadlocked votes of the board. The amended complaint additionally alleges the enacted bill substantially impairs the townships' ability to control their development and the character of their communities in accordance with their residents' desires because the bill strips townships of their ability to regulate population *Page 7 
density in residential areas for reasons of convenience, comfort, prosperity or general welfare and instead permits such regulation only for reasons of health and safety.
 {¶ 13} The state concedes the amended complaint's allegations confer standing upon plaintiffs to challenge the bill's amendments to R.C. 3735.27, 519.02 and 519.171. Nonetheless, because none of the plaintiffs is a county commissioner, the state contends plaintiffs lack standing to challenge the constitutionality of the bill's amendments to R.C. 303.02
and 303.161, which pertain to the zoning authority of county commissioners. The state further argues plaintiffs do not have standing to challenge the enactment of R.C. 3313.537, the bill's provision addressing extracurricular activities of charter school students, because none of the plaintiffs is a student, a community school, or a school district and therefore cannot establish any direct and concrete injury resulting from the enactment of the statute.
 {¶ 14} Plaintiffs, however, did not limit their constitutional challenge to one or more specific provisions of the bill. Rather, plaintiffs challenged the enactment of Am. Sub. S.B. No. 18 in its entirety. Because they alleged injury resulting from the enactment of the legislation, they have a direct interest in the challenged legislation that is adverse to the legal interests of the state and gives rise to an actual controversy for the courts to decide. Moreover, they properly framed the issues and presented them with "the necessary adversarial zeal." Indeed, to deny plaintiffs standing would insulate legislation from one-subject constitutional scrutiny unless a coalition of plaintiffs could be assembled to cover the wide variety of subjects amassed in a single piece of legislation. The trial court did not err in determining plaintiffs have standing to challenge the constitutionality of Am. Sub. S.B. No. 18 in its entirety. The state's first assignment of error is overruled. *Page 8 
V. One-Subject Rule {¶ 15} The state's second assignment of error asserts the trial court erred in declaring that Am. Sub. S.B. No. 18 violates the one-subject rule contained in Section 15(D), Article II of the Ohio Constitution, and in striking the entire bill as void.
 {¶ 16} Section 15(D), Article II of the Ohio Constitution provides that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title." The one-subject rule was incorporated into Ohio's Constitution in 1851 to impose "concrete limits on the power of the General Assembly to proceed however it saw fit in the enactment of legislation." Sheward, supra, at 495.
 {¶ 17} The Supreme Court of Ohio observed that "when there is an absence of common purpose or relationship between specific topics in an act and when there are no discernible practical, rational or legitimate reasons for combining the provisions in one act, there is a strong suggestion that the provisions were combined for tactical reasons,i.e., logrolling[,] * * * the very evil the one-subject rule was designed to prevent[.]" State ex rel. Dix v. Celeste (1984),11 Ohio St.3d 141, 145. Logrolling is "the practice of combining and thereby obtaining passage for several distinct legislative proposals that would probably have failed to gain majority support if presented and voted on separately." In re Nowak, 104 Ohio St.3d 466, 2004-Ohio-6777, at ¶ 31, citing Sheward, at 495-496. See, also, Hoover v. Franklin Cty. Bd. ofCommrs. (1985), 19 Ohio St.3d 1, 6.
 {¶ 18} A "manifestly gross and fraudulent violation" of Ohio's one-subject provision will cause an enactment to be invalidated.Nowak, supra, at syllabus, modifying Dix, supra, at syllabus. Because the constitutional provision is directed at disunity, not plurality, in subject matter, the "mere fact that a bill embraces more than one topic is not *Page 9 
fatal, as long as a common purpose or relationship exists between the topics." Sheward, at 496, citing Hoover, supra, at 6; Nowak, at ¶ 59;Dix, at 146; State ex rel. Hinkle v. Franklin Cty. Bd. of Elections
(1991), 62 Ohio St.3d 145, 148.
 {¶ 19} Ohio's judiciary is reluctant to interfere with the legislative process. The judiciary affords the General Assembly great latitude in enacting comprehensive legislation and indulges every presumption in favor of the constitutionality of legislative enactments. State ex rel.Ohio Civ. Serv. Employees Assn., AFSCME, Local 11, AFL-CIO v. State Emp.Relations Bd. ("SERB"), 104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 27;Sheward, supra, at 496; Hoover, supra, at 6. Nevertheless, a court's review of legislation must not be so deferential as to effectively negate the one-subject provision of Section 15(D), Article II of the Ohio Constitution. SERB, at ¶ 29; Sheward, at 496; Dix, at 144. In determining whether a legislative enactment violates Ohio's one-subject rule, a court analyzes the particular language and subject matter of the act, rather than extrinsic evidence of fraud or logrolling; in order to effectuate the purposes of the rule it must invalidate an act that contains unrelated provisions. Nowak, at ¶ 71, citing Dix, at 145;Simmons-Harris v. Goff (1999), 86 Ohio St.3d 1, 15. See, also,SERB, at ¶ 29; Dix, at 144.
 {¶ 20} Assessing the appealed legislation within those parameters, we note Am. Sub. S.B. No. 18 contains at least three topics: (1) an alteration in the composition of boards of trustees of metropolitan housing authorities situated in charter counties, (2) changes in the purposes and scope of county and township zoning regulations, and (3) the creation of a right for charter school students to participate in extracurricular activities at traditional public schools. The pivotal question is whether these topics share a common *Page 10 
purpose or relationship so that they unite to form a single subject for purposes of Section 15(D), Article II of the Ohio Constitution.Sheward, at 497.
 {¶ 21} In the trial court, the state argued the common thread of "modifying local authority" ties the topics together. The trial court rejected the state's argument, stating it "constitutes an attempt to justify vastly different subjects with a standard that is far too vague, * * * as almost any bill will modify local authority at least to some degree." (Aug. 13, 2007 Decision, 8.) The trial court found such a "blatant disunity" between the various provisions of the bill that the bill violated the one-subject rule.
 {¶ 22} On appeal, the state now posits that Am. Sub. S.B. No. 18 does not constitute a manifestly gross and fraudulent violation of the one-subject rule because the bill as a whole relates to and shares the common topic of "the authority to regulate local housing." Specifically, the state asserts that "[w]hen the General Assembly introduced S.B. 18, and when it initially passed the Ohio Senate, the bill modified the authority to regulate local housing by amending the composition of certain metropolitan housing authorities under R.C. 3735.27." (Appellant's brief, 12.) With no explanation in support, the state further asserts that all of the county and township zoning provisions contained in the bill are "likewise related to Bill's common purpose of modifying the authority to regulate local housing." Id. The state advances no argument that R.C. 3313.537, which pertains to extracurricular activities of charter school students, similarly relates to "the authority to regulate local housing" or that it shares any common purpose with the bill's other provisions. Nevertheless, the state urges this court to uphold the constitutionality of Am. Sub. S.B. No. 18 as a bill that is short and limited in scope and has no "blatant disunity" existing between its provisions. *Page 11 
 {¶ 23} Even granting all due respect and deference to the General Assembly, we are compelled to conclude the state's argument stretches the one-subject concept too far, in effect rendering it meaningless. SeeSERB, at ||33, and Simmons-Harris, supra, at 16. Although, as the state contends, the bill is relatively short and limited in scope, a blatant disunity of subject matter exists in the bill. The bill's revisions to R.C. 3735.27, addressing the membership of boards of trustees of certain metropolitan housing authorities, may affect the composition of the boards of trustees, but they do not modify the board's actual authority to provide housing for low-income people. See R.C. 3735.31. The bill's charter school student extracurricular activities provision in R.C. 3313.537 likewise does not relate to "the authority to regulate local housing," as the state apparently concedes. Nonetheless, the bill's revisions to R.C. 303.02, 303.161, 519.02 and 519.171 arguably relate to "the authority to regulate local housing" because they affect the ability of counties and townships to utilize their zoning powers to control development and regulate population density. Even so, these four sections of the bill share no relationship or common purpose with either R.C. 3735.27 or 3313.537, as enacted in the bill.
 {¶ 24} The record suggests no rational reason for combining such distinct provisions into one bill except that, when the bill contained only the proposed revisions to R.C. 3735.27, the bill was stalled for 20 months until the other provisions were included; then the amended bill proceeded immediately to a vote and approval. Because the blatant disunity of subject matter strongly suggests the bill's disparate provisions were combined for the tactical reason of logrolling, Am. Sub. S.B. No. 18 is a manifestly gross and fraudulent violation of the one-subject rule of Section 15(D), Article II of the Ohio Constitution. *Page 12 
 {¶ 25} The state urges this court not to invalidate the bill in its entirety and proposes that we sever the offending unconstitutional portions of the bill in order to preserve portions of the bill that are constitutional and for which plaintiffs had standing to assert constitutional challenges. To the extent the state again argues that no portion of the bill should be deemed unconstitutional due to plaintiffs' lack of standing, their argument is without merit; plaintiffs had standing to challenge the bill in its entirety.
 {¶ 26} As to the state's severance argument, the state correctly notes R.C. 1.50 permits portions of a bill that violate the one-subject rule to be severed from the bill in order to cure the defect and save the portions of the bill that relate to a single subject. Hinkle, supra, at 149. Accordingly, under Hinkle, "whenever a bill contains more than one subject, this court is permitted to ascertain which subject is primary and which subject is an unrelated add-on. The former is then saved by severing the latter." Sheward, supra, at 500.
 {¶ 27} Here, however, severance cannot be applied to save any portion of Am. Sub. S.B. No. 18 because we can discern no "primary" subject matter of the bill. The bill's original legislation pertaining to metropolitan housing authorities carried through all committee hearings but it languished in the House committee until the bill's five other provisions were added on December 8, 2004. Thus, approval of the original legislation appears to be so dependant upon the later amendments to the bill that the original legislation, revising R.C. 3735.27, cannot be deemed to be the "primary" purpose of the bill. Although the bill's provisions pertaining to county and township zoning comprise a plurality of the bill's provisions, they do not comprise a majority of the bill. Nor does their subject matter appear to be any more the "primary" subject matter of the bill than are the *Page 13 
other, co-extensive subjects of the bill. As a result, "any attempt on our part to carve out a primary subject by identifying and assembling what we believe to be key or core provisions of the bill would constitute a legislative exercise wholly beyond the province of this court." Sheward, at 500.
 {¶ 28} Because severability is not an option in this case, we must hold Am. Sub. S.B. No. 18 unconstitutional in toto due to its manifestly gross and fraudulent violation of the one-subject rule of Section 15(D), Article II of Ohio's Constitution. The state's second assignment of error is overruled. Moreover, because Am. Sub. S.B. No. 18 is unconstitutional in its entirety under the one-subject rule, and no portion of the bill remains valid through severance, the state's final assignment of error is rendered moot.
 {¶ 29} Having overruled the state's first two assignments of error, rendering moot the state's third assignment of error, we affirm the judgment of the trial court declaring Am. Sub. S.B. No. 18 unconstitutional, and consequently null and void, in its entirety.
Judgment affirmed.
McGRATH, P.J., and SADLER, J., concur.