[Cite as *Linndale v. State*, 2014-Ohio-4024.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Village of Linndale et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 14AP-21 |
| v. | : | (C.P.C. No. 13CV-2640) |
| State of Ohio et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 16, 2014

*McCarthy, Lebit, Crystal & Liffman Co., L.P.A., Charles A. Nemer, Leslie E. Wargo* and *David A. Schafer*; *Dinsmore & Shohl LLP, Mark A. Vander Laan* and *Bryan E. Pacheco*; *George Simon*, Law Director of Linndale, for appellants.

*Michael DeWine*, Attorney General, *Richard N. Coglianese* and *Holly W. Wallinger*, for appellees State of Ohio, Secretary of State Jon Husted, Ohio Attorney General Mike DeWine, and Governor John R. Kasich.

*Frost Brown Todd LLC, Philip K. Hartmann, Stephen J. Smith* and *Yazan S. Ashra Wi*, for amicus curiae The Ohio Municipal League.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiffs-appellants, the villages of Linndale, Brice, West Mifflin, Belmore, Amesville, West Millgrove, and Nashville ("appellants"), appeal from a judgment of the Franklin County Court of Common Pleas denying their motion for summary judgment and granting the motion to dismiss filed by defendants-appellees, State of Ohio, Attorney General Michael DeWine, and Governor John R. Kasich (collectively "the state"). Because we conclude that the legislation challenged by appellants violated the one-subject rule

under the Ohio Constitution because it incorporated amendments to R.C. 4511.204 and 4511.205 regarding the use of handheld electronic communications devices while driving, we reverse.

{¶ 2}   This appeal involves legislation, House Bill No. 606 ("H.B. 606"), that was introduced in the Ohio House of Representatives and read for the first time on November 21, 2012. As introduced, H.B. 606 made a single change to R.C. 1901.08, reducing the number of full-time judges on the Youngstown Municipal Court by one. H.B. 606 was read for a second time in the House on November 27, 2012, and referred to the House Committee on Judiciary and Ethics. It was reported out of committee, read for a third time, and passed the House on December 5, 2012. H.B. 606 was then read in the Senate for the first time on December 6, 2012. The bill was read a second time and referred to the Senate Committee on Judiciary on December 11, 2012. The committee added amendments to H.B. 606 eliminating certain mayor's courts and clarifying the effect of state and municipal measures prohibiting texting while driving and returned a substitute bill containing those amendments to the Senate, which read the bill for a third time and passed it on December 13, 2012. The following day, the House of Representatives voted to concur in the Senate amendments to H.B. 606. The statutory changes contained in H.B. 606 became effective on March 22, 2013.

{¶ 3}   The final version of H.B. 606, as amended by the Senate Committee on Judiciary, made changes to four statutes. It amended R.C. 1901.08 to reduce the number of full-time judges on the Youngstown Municipal Court by one ("the Youngstown-judgeship provision"). The bill amended R.C. 1905.01 to provide that, with certain exceptions, mayor's courts may be held in municipal corporations with a population of more than 200; it also created a specific exception to the population requirement for any municipal corporation located entirely on an island in Lake Erie ("the mayor's-court provision"). Finally, H.B. 606 amended R.C. 4511.204 and 4511.205 to provide that prosecution under the state law prohibiting the use of a handheld electronic wireless communications device to write, send or read a text-based communication while operating a motor vehicle or the state law prohibiting any use of an electronic wireless communications device by a holder of a probationary driver's license or a holder of a temporary instruction permit under the age of 18 while operating a motor vehicle did not

preclude a prosecution for a substantially equivalent municipal ordinance based on the same conduct and that, if an offender was convicted or pled guilty to both offenses, the two offenses were allied offenses of similar import ("the texting-while-driving provision").

{¶ 4}   Appellants filed a complaint asserting that H.B. 606 was unconstitutional because it violated the one-subject rule under the Ohio Constitution by combining the mayor's-court provision and the texting-while-driving provision into the same legislation as the Youngstown-judgeship provision. Appellants further claimed that the manner in which the General Assembly adopted H.B. 606 violated the three-reading rule under the Ohio Constitution. Finally, appellants argued that H.B. 606 was unconstitutional because it classified municipal corporations differently based on population and did not apply uniformly throughout Ohio.

{¶ 5}   The state moved to dismiss the complaint, arguing that appellants failed to state a claim upon which relief could be granted. Appellants moved for summary judgment, asserting they were entitled to judgment as a matter of law. The common pleas court issued a judgment denying appellant's motion for summary judgment and granting the state's motion to dismiss, concluding that H.B. 606 was not unconstitutional.

{¶ 6}   Appellants appeal from the trial court's judgment, assigning one error for this court's review:

> The trial court erred in denying the Villages' motion for summary judgment, and granting the State's motion to dismiss, because H.B. 606 is unconstitutional.

{¶ 7}   We review de novo a trial court's dismissal of a complaint, pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted. *Modern Office Methods, Inc. v. Ohio State Univ.*, 10th Dist. No. 11AP-1012, 2012-Ohio-3587, ¶ 9. Under the de novo standard, we independently review the record and afford no deference to the trial court's decision. *State v. Romage*, 10th Dist. No. 11AP-822, 2012-Ohio-3381, ¶ 6. "Dismissal for failure to state a claim upon which relief can be granted is proper if, after all factual allegations are presumed to be true and all reasonable inferences are made in favor of the non-moving party, it appears beyond doubt from the complaint that the plaintiff could prove no set of facts warranting the requested relief." *Modern Office* at ¶ 9.

{¶ 8}   Additionally, because appellants' complaint involves challenges to the constitutionality of a statute, we note that there is a presumption of constitutionality for

lawfully enacted legislation. *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, ¶ 24. "[B]efore a statute is struck down 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Id.*, quoting *State ex rel. Dickman v. Defenbacher*, 126 Ohio St. 142 (1955), paragraph one of the syllabus.

{¶ 9}   Within appellants' sole assignment of error, they assert four arguments. First, they argue that H.B. 606 violates the one-subject rule set forth in Article II, Section 15(D) of the Ohio Constitution. Second, they assert that the General Assembly violated the three-reading rule in enacting H.B. 606, in violation of Article II, Section 15(C) of the Ohio Constitution. Third, they claim that H.B. 606 violates Article XVIII, Section 1 of the Ohio Constitution because it classifies municipalities differently based on population. Fourth, appellants argue that H.B. 606 violates Article II, Section 26 of the Ohio Constitution because it does not apply uniformly to all areas of the state. We will consider each of these arguments in turn.

### I. One-Subject Rule

{¶ 10} Article II, Section 15(D) of the Ohio Constitution provides that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title." The primary purpose of the one-subject rule is to prevent legislative "logrolling"—i.e., " 'the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.' " *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142-43, quoting 1A Sutherland, *Statutes and Statutory Construction*, Section 17.01 (4th Ed.1972). Appellants argue that H.B. 606 is an example of impermissible logrolling, claiming that the mayor's-court provision and the texting-while-driving provision were taken from another bill that was stuck in committee and added at the last minute to an otherwise noncontroversial bill intended solely to eliminate one judge from the Youngstown Municipal Court.

{¶ 11} The one-subject rule is mandatory and may result in the invalidation of legislation. *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, ¶ 54. However, there is a strong presumption in favor of the constitutionality of a legislative enactment. *Dix* at 142.

Accordingly, only "a manifestly gross and fraudulent violation" of the one-subject rule will cause this court to invalidate a legislative enactment. *Id.* at 145. Where a court determines that legislation contains more than one subject, it may determine which subject is primary and which is an unrelated addition. The court may then sever the unrelated provisions and preserve the portions of the bill relating to a single subject. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 500 (1999); *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 149 (1991).

{¶ 12} Determining a statute's constitutionality depends primarily on a "case-by-case, semantic and contextual analysis." *Dix* at 145. The fact that legislation contains multiple topics is not necessarily fatal, as the Supreme Court of Ohio has declared that "disunity of subject matter, not aggregation, is the polestar in assessing a violation of the one-subject rule." *In re Nowak* at ¶ 59. Where legislation contains multiple topics, "[t]he pivotal question is whether [the] topics share a common purpose or relationship so that they unite to form a single subject for purposes of [the one-subject rule]." *Akron Metro. Housing Auth. Bd. of Trustees v. State*, 10th Dist. No. 07AP-738, 2008-Ohio-2836, ¶ 20.

{¶ 13} In *Akron Metro. Housing*, this court concluded that the challenged legislation violated the one-subject rule by combining multiple provisions related to different topics. The legislation at issue began in the Senate as a measure to amend R.C. 3735.27 to change the composition of certain metropolitan housing authorities. *Id.* at ¶ 2. After passing the Senate with minor amendments, the legislation was introduced in the House and referred to committee. The House committee amended the legislation with several new provisions that amended four existing statutes and created a new statute. *Id.* at ¶ 4. Analyzing the legislation, this court concluded that it contained at least three topics: (1) alteration of the composition of boards of trustees of metropolitan housing authorities situated in charter counties, (2) modification of the purposes and scope of county and township zoning regulations, and (3) creation of a right for charter school students to participate in extracurricular activities at traditional public schools. *Id.* at ¶ 20.

{¶ 14} The state argued on appeal that the three topics shared the common purpose of "the authority to regulate local housing." *Id.* at ¶ 22. This court concluded, however, that the state's argument "stretche[d] the one-subject concept too far, in effect

rendering it meaningless." *Id.* at ¶ 23. The court found a "blatant disunity" of subject matter in the bill, concluding that the modifications to the boards of trustees of certain metropolitan housing authorities did not modify those boards' authority to provide housing. Similarly, the provisions related to charter school student extracurricular activities did not relate to the authority to regulate local housing. *Id.* The court determined that it could not discern a "primary" subject matter of the legislation and, therefore, could not sever any portion of it to save the remainder. *Id.* at ¶ 27. The court held that the legislation constituted a manifestly gross and fraudulent violation of the one-subject rule and, therefore, was unconstitutional in its entirety. *Id.* at ¶ 28. *See also Riebe Living Trust v. Concord Twp.*, 11th Dist. No. 2011-L-068, 2012-Ohio-981, ¶ 13-24 (considering the same bill addressed in *Akron Metro. Housing* and concluding that it violated the one-subject rule).

{¶ 15} Similarly, the Supreme Court of Ohio held that a bill that combined provisions modifying the state's judiciary and local option liquor laws violated the one-subject rule. *Hinkle* at 149. The legislation at issue in *Hinkle* contained several provisions modifying the judicial system—it created an environmental division in the Franklin County Municipal Court and a judge for that division, created the Clermont County Municipal Court, added a common pleas judge in Lucas County, made revisions to municipal and county court law, and changed the disposition of certain fines paid into municipal and county courts. *Id.* at 148. The bill also changed the definition of the term "residence district" for purposes of a local option ballot question related to the sale of alcohol. *Id.* at 145-46. The party defending the statute argued that the topics in the legislation all related to "election matters" because it provided for elective judicial offices and related to local option elections. *Id.* at 148. The court rejected this reasoning, analogizing that "[t]o say that laws relating to the state judiciary and local option have elections in common is akin to saying that securities laws and drug trafficking penalties have sales in common—the connection is merely coincidental." *Id.* The court held that the section of the legislation changing the definition of a residence district for purposes of the local option privilege violated the one-subject rule, and it severed that portion of the bill in order to preserve the remainder. *Id.* at 149.

{¶ 16} By contrast, in *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, the Supreme Court of Ohio upheld a piece of legislation against a one-subject rule challenge. The legislation at issue in *Bloomer* contained provisions amending the process of notifying offenders of post-release control and providing a mechanism for correcting sentences where the trial court failed to notify the offender or incorporate post-release control in the sentencing entry, as well as provisions related to the sealing of juvenile court records. *Id.* at ¶ 10, 46. While concluding that post-release control and sealing juvenile delinquency records were two distinct topics, the court concluded that they shared a common relationship because they were related to the rehabilitation and reintegration of offenders into society. *Id.* at ¶ 53. Therefore, combining these topics into a single bill did not constitute a manifestly gross or fraudulent violation of the one-subject rule. *Id.* at ¶ 56.

{¶ 17} We conclude that the current case is more analogous to *Akron Metro. Housing* and *Hinkle* than it is to *Bloomer*. H.B. 606 contains three distinct topics: (1) elimination of one judgeship on the Youngstown Municipal Court; (2) an increase in the population threshold for municipal corporations to hold mayor's courts from 100 to 200, with certain exceptions, thereby eliminating certain mayor's courts; and (3) clarification that an individual may be prosecuted under the state law banning texting while driving by any driver or operating any handheld device while driving for certain classes of permit holders and a substantially equivalent municipal ordinance but that, if convicted under both, the two offenses are allied offenses of similar import.

{¶ 18} The state argues that these three provisions share the common purpose of modifying the "authority, scope, and jurisdiction" of statutory courts. We agree that the Youngstown-judgeship provision and the mayor's-court provision share a common relationship of regulating the organization and structure of Ohio's statutory courts. Both of these provisions modify statutes within Title 19 of the Revised Code, which governs municipal, mayor's, and county courts. The state argues that the texting-while-driving provision relates to the jurisdiction of statutory courts by preserving municipal ordinances so that mayor's courts can maintain jurisdiction to hear violations of such ordinances. However, this argument stretches the one-subject concept too far. *Hinkle* at 148; *Akron Metro. Housing* at ¶ 23. There is a blatant disunity between the texting-while-

driving provision and the other portions of H.B. 606. The texting-while-driving provision amends portions of Chapter 4511 of the Revised Code, which contains laws governing the operation of motor vehicles and other traffic laws. Unlike the other two provisions in H.B. 606, the texting-while-driving provision does not relate to the number of judges or courts in the state. Rather, it addresses the prosecution and punishment for specific violations of the traffic laws. Therefore, we conclude that H.B. 606 violates the one-subject rule because it contains provisions that share no relationship or common purpose.

{¶ 19} Our analysis of H.B. 606 does not end with the conclusion that it violates the one-subject rule. We also must consider whether it is possible to determine the primary subject matter of the bill and thereby preserve that subject matter by severing the unrelated portions. H.B. 606 was introduced as a measure that would eliminate one judgeship on the Youngstown Municipal Court. This portion of the bill remained unchanged despite subsequent amendments. Based on our analysis, we conclude that the primary subject matter of H.B. 606 was the organization and structure of Ohio's statutory courts. With respect to the amendments added during the legislative process, as explained above, we conclude that the mayor's-court provision is consistent with the original primary purpose of the legislation. This purpose may be preserved by severing the texting-while-driving provision. Accordingly, we hold that the portions of H.B. 606 amending R.C. 4511.204 and 4511.205 are unconstitutional and must be severed.

## II. Three-Reading Rule

{¶ 20} Appellants also argue that the General Assembly violated the three-reading rule under the Ohio Constitution in the process of adopting H.B. 606. Article II, Section 15(C) of the Ohio Constitution states that "[e]very bill shall be considered by each house on three different days, unless two-thirds of the members elected to the house in which it is pending suspend this requirement, and every individual consideration of a bill or action suspending the requirement shall be recorded in the journal of the respective house." Appellants assert that the General Assembly violated this provision in enacting H.B. 606 because the final version as passed was only read once in the Senate after being amended in committee and never read in the House, with the House concurring in the Senate amendments without reading the legislation.

{¶ 21} With respect to the three-reading rule, the Supreme Court of Ohio has held that "a legislative Act is valid if the requisite entries are made in the legislative journals and there is no indication that the *subject matter of the original bill was 'vitally altered'* such that there is no longer a common purpose or relationship between the original bill and the bill as amended." (Emphasis sic.) *State ex rel. AFL-CIO v. Voinovich*, 69 Ohio St.3d 225, 233 (1994). In *Voinovich*, the court expounded on its prior decision in *Hoover v. Bd. of Cty. Commrs.*, 19 Ohio St.3d 1 (1985). The *Hoover* case involved a situation where, after legislation was introduced and read three times in the Senate, a House committee stripped the original language from the bill and substituted completely different content. Because the final version of the bill had not been read three times in the Senate, the *Hoover* court held that the plaintiffs stated a claim for a violation of the three-reading rule. *Voinovich* at 232, citing *Hoover* at 5. By contrast, the court concluded that the legislation at issue in *Voinovich* had been heavily amended in both chambers of the General Assembly and by a conference committee, but held that the final version as passed by both chambers retained its common purpose with the earlier versions read in each chamber. *Id.* at 234. Thus, unlike the legislation in *Hoover*, the bill at issue in *Voinovich* had not been "vitally altered" and did not violate the three-reading rule. *See also ComTech Sys., Inc. v. Limbach*, 59 Ohio St.3d 96, 100 (1991) (holding that an amendment imposing sales tax on automatic data processing and computer services did not vitally alter an appropriations bill because "[r]aising and spending revenue are at the heart of an appropriations bill; adding a new taxable transaction does not vitally alter this scheme").

{¶ 22} Having concluded that that the texting-while-driving provision must be severed from H.B. 606 as a violation of the one-subject rule, we are left with the question of whether the amendment of H.B. 606 by the Senate Committee on Judiciary "vitally altered" the bill by adding the mayor's-court provision, such that it was necessary for each chamber to have three readings of the amended bill. We conclude that the amendment did not vitally alter the bill. H.B. 606 initially addressed the sole topic of eliminating one judgeship on the Youngstown Municipal Court. The General Assembly's journals indicate that this version was read three times in the House of Representatives and twice in the Senate. The amendment to H.B. 606 made by the Senate committee added an additional

topic: increasing the population threshold for municipal corporations to hold mayor's courts from 100 to 200, with certain exceptions, thereby eliminating certain mayor's courts. As explained above, while the amended bill contained two topics, they shared a common relationship of regulating the organization and structure of Ohio's statutory courts. Therefore, the amended version of H.B. 606 retained a common purpose with the original version. Under these circumstances, the bill was not vitally altered by the amendment and, because the legislative journals reflect that each chamber read the bill three times, the process under which it was adopted did not violate the three-reading rule.

{¶ 23} Finally, we note as well that the third version of the bill considered by the full Senate contained the mayor's-court amendment. At this time, members of the Senate could have moved that the amendment be stripped or otherwise altered. They did not. The Senate passed the version of the bill with the amendment. Because this version was different from the version passed by the House, it was returned to the House for further consideration. At this time, members of the House could have moved that the amendment be stripped or otherwise altered. They did not. The House concurred with the version containing the amendment, thereby foregoing the opportunity to further consider and debate the bill in a conference committee. Both the Senate and the House had opportunities to consider the version of the bill with the mayor's-court amendment consistent with the purpose of the three-reading requirement.

### III. Classification of Municipalities By Population

{¶ 24} Appellants also argue that H.B. 606 violates Article XVIII, Section 1 of the Ohio Constitution by classifying municipalities differently based on population. Article XVIII, Section 1 provides that municipal corporations are classified into cities and villages, with all municipal corporations having a population over 5,000 classified as cities and all other municipal corporations classified as villages. The Supreme Court of Ohio explained that this clause was adopted in 1912 in response to the General Assembly's practice of imposing an increasing number of classifications and grades of cities, villages, and other municipal corporations. *Elyria v. Vandemark*, 100 Ohio St. 365, 370-71 (1919). As a result of Article XVIII, Section 1, the General Assembly "is without authority to make further classification [of municipalities] for the purpose of legislation affecting municipal government." *Id.* at syllabus. Thus, for example, a statute classifying cities according to

population and making city council salaries dependent on population is unconstitutional. *Mansfield v. Endly*, 38 Ohio App. 528, 534 (5th Dist.1931), *aff'd* 124 Ohio St. 652.

{¶ 25} R.C. 1905.01 confers jurisdiction on certain municipalities to maintain mayor's courts but does not require those municipalities to have mayor's courts. *See State ex rel. Boston Hts. v. Petsche*, 27 Ohio App.3d 106, 107 (9th Dist.1985). Appellants argue, therefore, that the amendments to R.C. 1905.01 contained in H.B. 606 did not abolish courts but, rather, limited certain municipalities' ability to convene a mayor's court based on population size. Thus, appellants argue that H.B. 606 classifies and distinguishes municipal powers based on population, in violation of Article XVIII, Section 1.

{¶ 26} The constitution provides that "[t]he judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the Supreme Court as may from time to time be established by law." Article IV, Section 1, Ohio Constitution. Under this clause, the General Assembly has the exclusive power to create "inferior" courts, also referred to as statutory courts. *State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 602 (1929). Pursuant to this authority, the General Assembly has established municipal courts, county courts, and mayor's courts. *See Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, ¶ 9 (referring to municipal, county, and mayor's courts as statutory courts). Because the General Assembly is vested with exclusive power to create statutory courts, a municipality may not create a mayor's court by local ordinance; authorization for such a court must come from the General Assembly. *State ex rel. Cherrington v. Hutsinpiller*, 112 Ohio St. 468 (1925), syllabus ("The municipalities of this state have no power, by charter or otherwise, to create courts and appoint judges thereof, such exercise of power being in violation of sections 1 and 10, [A]rticle IV, of the Constitution of Ohio."); *Petsche* at 106 ("Section 1, Article IV of the Ohio Constitution vests exclusive power in the General Assembly to create courts inferior to the Supreme Court. Thus, the village of Boston Heights cannot create a mayor's court by local ordinance."). Under Article IV, Section 1, the General Assembly also has authority to abolish statutory courts. *Kelley v. State*, 94 Ohio St. 331, 336-37 (1916) ("Having authority to create any such court in any section of the state, as in its opinion was necessary and proper, and define its jurisdiction, the power of the Legislature to abolish such court or curtail its function necessarily follows.").

{¶ 27} Appellants' interpretation of the amendments to R.C. 1905.01 contained in H.B. 606 is an argument of form over function. Although the amendments did not expressly abolish mayor's courts in specific named municipalities, they had the effect of eliminating mayor's courts operating in any municipality with a population of 200 or less, with certain exceptions. The General Assembly could have identified specific mayor's courts in small municipalities to be eliminated. *See State ex rel. Forchheimer v. Le Blond*, 108 Ohio St. 41 (1923), syllabus ("The superior court of Cincinnati was created by the Legislature, and the Legislature has the power to abolish it or to modify its jurisdiction."). Instead of naming specific courts, however, the General Assembly used a population threshold to define where mayor's courts could exist. We cannot conclude that this method of exercising its powers under Article IV, Section 1 is clearly unconstitutional. Thus, the amendments to R.C. 1905.01 were a valid exercise of the General Assembly's exclusive power to define the structure of the system of statutory courts in Ohio by establishing and, when it deems necessary, abolishing such courts. *Kelley* at 336-37.

{¶ 28} Moreover, the Supreme Court of Ohio has held that "[n]one of the various provisions of [A]rticle XVIII of the Constitution of Ohio are effective to abridge the sovereignty of the state over municipalities in respect to its courts." *Ramey* at syllabus. *See also Geisinger v. Cook*, 52 Ohio St.2d 51 (1977), syllabus (holding that Article IV, Section 15 of the Ohio Constitution, pertaining to changing the number of judges on courts created by the constitution, did not limit the General Assembly's power to abolish municipal courts). Therefore, we reject appellants' argument that H.B. 606 violates Article XVIII, Section 1 of the Ohio Constitution.

## IV. Uniformity Clause

{¶ 29} Finally, appellants argue that H.B. 606 violates the uniformity clause of the Ohio Constitution, which provides that "[a]ll laws, of a general nature, shall have a uniform operation throughout the state." Article II, Section 26, Ohio Constitution. Appellants argue that H.B. 606 violates this clause because it permits a municipality located entirely on an island in Lake Erie to have a mayor's court if its population is less than 200, while municipalities in other parts of the state may not have mayor's courts unless their population exceeds 200.

{¶ 30} Courts apply a two-part test in determining whether legislation violates the uniformity clause. First, the court must determine whether the statute is a law of a general or a special nature. Second, the court must determine whether the statute operates uniformly throughout the state. *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 541 (1999). "A law is general if the subject does or may exist in, and affect the people of, every county in the state." *Cuyahoga Cty. Veterans Serv. Comm. v. State*, 159 Ohio App.3d 276, 2004-Ohio-6124 (10th Dist.), citing *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 12 (1999). Appellants argue that H.B. 606 is a general law because it applies to every municipality and affects every person in Ohio. They assert that H.B. 606 does not operate uniformly throughout the state because it provides an exception for any municipality located entirely on an island in Lake Erie to have a mayor's court if it has a population of less than 200. The trial court rejected appellants' uniformity clause claim, citing *State ex rel. D'Alton v. Ritchie*, 97 Ohio St. 41 (1917). In *D'Alton*, the Supreme Court of Ohio stated that "[a] law establishing a local court is not a law of a general nature, and is not required to have uniform operation throughout the state." *Id.* at syllabus.

{¶ 31} As explained above, the General Assembly has exclusive power under Article IV, Section 1 of the Ohio Constitution to create statutory courts. *See Ramey* at 602. In *State ex rel. Sheets v. Bloch*, 65 Ohio St. 370 (1901), the Supreme Court of Ohio considered the constitutionality of legislation creating a "court of insolvency" in certain counties. *Id.* at 370-71. Based on the conditions set forth in the legislation, only Cuyahoga County was eligible to have a court of insolvency. *Id.* at 371. The Supreme Court concluded that the legislation was constitutional despite the fact that it had the effect of creating a court in only one county.  The Supreme Court held that the uniformity clause imposed a limit on the general legislative power vested in the General Assembly by Article II, Section 1 of the Ohio Constitution. *Id.* at 390. However, the Supreme Court reasoned that Article IV, Section 1 constitutes a "*special grant* of legislative power upon a particular subject, which itself prescribes the rule for the government of the legislative body in the exercise of that power." (Emphasis added.) *Id.* at 390-91. By the terms of Article IV, Section 1, "[t]he only limitation placed upon the exercise of [the power conferred by Article IV, Section 1], is that the courts so established shall be inferior to the Supreme Court." *Id.* at 391.  Therefore, the Supreme Court reasoned, the uniformity clause under

Article II, Section 26 of the Ohio Constitution did not limit the General Assembly's authority to enact statutes establishing local courts pursuant to Article IV, Section 1. *See also Miller v. Eagle*, 96 Ohio St. 106, 112 (1917) ("As was said in [*Sheets*], the General Assembly is vested with full power to determine what courts inferior to the Court of Appeals it will establish * * * and in the enactment of laws relating thereto is not subject to the limitation imposed upon the legislative power in requiring all laws of a general nature to have a uniform operation throughout the state."); *Kelley v. State*, 94 Ohio St. 331, 336 (1916) ("[T]he provisions of section 26 of article 2 of the Constitution have no application to legislation enacted pursuant to the special grant of legislative power contained in section 1 of article 4 of the Constitution."); *Ex parte Hesse*, 93 Ohio St. 230, 232-33 (1915).

{¶ 32} We conclude that H.B. 606 was a valid exercise of the General Assembly's authority under Article IV, Section 1 of the Ohio Constitution to establish and regulate statutory courts. Pursuant to *Sheets*, the uniformity clause does not limit the General Assembly's exercise of that power. Accordingly, we reject appellants' argument that H.B. 606 is unconstitutional because it violates the uniformity clause.

{¶ 33} In summary, we conclude that H.B. 606 violated the one-subject rule by combining the texting-while-driving provision in the same measure as the Youngstown-judgeship provision and the mayor's-court provision. We hold that the texting-while-driving provision must be severed in order to preserve the primary subject matter of the legislation. We reject appellants' claims that the General Assembly violated the three-reading rule in adopting H.B. 606. We further reject appellants' arguments that H.B. 606 violated the constitution by treating municipalities differently based on population and that H.B. 606 violated the uniformity clause.

{¶ 34} For the foregoing reasons, we sustain appellants' sole assignment of error. We reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed; cause remanded.*

KLATT, J., concurs.
SADLER, P.J., concurs in part; dissents in part.

SADLER, P.J., concurring in part, dissenting in part.

{¶1}   Because I agree with the majority's conclusion that H.B. No. 606 violates the one-subject rule but disagree with the conclusion that the process under which H.B. No. 606's amendments were adopted did not violate the three-reading rule, I respectfully concur in part and dissent in part.

{¶2}   As the majority recognizes, after severing the texting-while-driving provision from H.B. No. 606, we are left to consider whether the addition of the mayor's-court provision vitally altered the bill such that it was necessary for each chamber to have three readings of the amended bill.  The majority finds that the mayor's-court provision and the Youngstown-judgeship provision share a common relationship of "regulating the organization and structure of Ohio's statutory courts," and, thus, three readings were not required.  (Majority, ¶ 22.)

{¶3}   To reach said conclusion, it appears the majority employs the same test as that used to determine whether H.B. No. 606 violated the single-subject rule.  I am cognizant that, when considering a challenge to legislation on the basis of a single-subject violation, case law directs "[t]he pivotal question is whether [the] topics share a common purpose or relationship so that they unite to form a single subject for purposes of [the one-subject rule]."  *Akron Metro. Housing Auth. Bd. of Trustees v. State*, 10th Dist. No. 07AP-738, 2008-Ohio-2836, ¶ 20.  Likewise, when considering a challenge to legislation on the basis of the three-reading rule, *State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 225 (1994), held that "a legislative Act is valid if the requisite entries are made in the legislative journals and there is no indication that the *subject matter of the original bill was 'vitally' altered* such that there is no longer a common purpose or relationship between the original bill and the bill as amended."  *Id.* at 233.  While I note the similarity in language, when read as a whole, I interpret *Voinovich* as instructing that in addition to commonality, process is an important consideration as well.

{¶4}   The relators in *Voinovich* proposed that, to determine whether a bill has been "vitally altered," one must consider the degree of amendment.  The court rejected such an interpretation and cautioned that the court "would be setting dangerous and impracticable precedent if it undertook a duty to police any such difference of degree."

*Id.*  Therefore, the court stated, "[i]nstead, we must look to the underlying purpose of the three-consideration provision," which is "to prevent hasty action and to lessen the danger of ill-advised amendment at the last moment.  The [three-consideration] rule provides time for more publicity and greater discussion and affords each legislator an opportunity to study the proposed legislation, communicate with her or her constituents, note the comments of the press and become sensitive to public opinion." *Id.* at 233-34, quoting *Hoover v. Bd. Franklin Cty. Commrs.*, 19 Ohio St.3d 1, 8 (1985) (Douglas, J., concurring).  Even if the Youngstown-judgeship provision and the mayor's-court provision can be said to share a common purpose of regulating the organization and structure of Ohio's statutory courts, I cannot find that the process utilized here meets the purpose of the three-reading rule.

{¶5}     In *Voinovich*, after many amendments, the final version of the bill was reread only once in each chamber.  Nonetheless, the *Voinovich* court found the process met the purpose of the three-reading rule because (1) through its amendments, the bill retained its common purpose of modifying workers' compensation laws, (2) both houses deliberated upon the bill and its amendments for several months, (3) hearings were held and the issues were openly debated, and (4) the Governor stimulated the debate by announcing in the press that he would veto any appropriations bill that did not also substantially reform the underlying workers' compensation system.  Therefore, the court concluded "[i]t would be difficult to characterize this activity as 'hasty action' that precipitated 'ill-advised amendment at the last moment.' " *Id.* at 234.

{¶6}     Thus, the *Voinovich* court considered not only commonality but also process.  In my view, the process here differs starkly from that in *Voinovich*.  In *Voinovich*, the final version of the bill was reread once in *each* chamber, while here the final version of the bill was reread once in only *one* chamber, the Senate.  Additionally, in the case before us, the three readings in the House occurred within a few weeks, specifically, November 12, November 27, and December 5, 2012, and the three readings in the Senate occurred over eight days.  As set forth in the majority's decision, H.B. No. 606 was first read in the Senate on December 6.  On December 11, the bill was read for the second time and referred to the Senate Committee on Judiciary.  Two days later, December 13, the bill with amendments was read in the Senate, and the Senate passed it

on the same day.  The following day, the House concurred in the Senate amendments. Hence, there is no indication that both chambers deliberated the amendments for any length of time.  Additionally, there is no indication in this case that any debates or hearings occurred as the amendments to H.B. No. 606 were read in the Senate on December 13, and, by the following day, it had passed both the House and the Senate without any reading of the amendments having occurred in the House.  Nor is there any indication in the record that this matter was given any publicity so as to stimulate any debate, as was the case in *Voinovich.*

{¶7}    As stated in *Voinovich,* the purpose of the three-reading rule is to provide time for publicity, discussion, and an opportunity for legislators to study the legislation and confer on the issues.  Instead, it appears from this record that the process undertaken to enact the mayors-court provision, one that affects every Ohio municipal corporation with populations of 200 persons or less thereby eliminating some mayor's courts in their entirety, was not only swift but also unanticipated.  Thus, even if I were to agree that the two provisions share a common purpose or relationship, I cannot conclude that the purpose of the three-reading rule was met in this case such that there has been no violation of the same.

{¶8}    Based on the foregoing, I conclude that the process under which H.B. No. 606 was adopted violated the three-reading rule, and I respectfully dissent from the majority's conclusion otherwise.  Having determined that H.B. No. 606 violates the three-reading rule, I need not consider appellant's remaining two arguments and find them moot.

{¶9}    For all of the above-stated reasons, I respectfully concur in part and dissent in part.

_____